**UNITED STATES of America, Appellant,**

v.

**Amrhu A. DYCE, Appellee.**

No. 94–3171.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 29, 1995.

Decided March 8, 1996.

Geoffrey Bestor, Assistant United States Attorney, Washington, DC, with whom Eric

H. Holder, Jr., United States Attorney, John R. Fisher, Elizabeth Trosman, P. Kevin Carwile, and Barbara J. Valliere, Assistant United States Attorneys, were on the briefs, argued the cause for appellant.

A.J. Kramer, Federal Public Defender, Washington, DC, with whom Leigh A. Kenny, Assistant Federal Public Defender, was on the brief, argued the cause for appellee.

Before BUCKLEY, GINSBURG, and TATEL, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

The United States questions the district court's authority to reduce appellee Amrhu Dyce's sentence below the level established by the United States Sentencing Guidelines on the basis of her "extraordinary" family responsibilities and "the totality of the circumstances." Because we agree with the Government that Dyce's family responsibilities were not exceptional and that the circumstances cited by the district court did not warrant a departure from the sentence mandated by the Guidelines, we vacate the sentence and remand the case for resentencing in accordance with this opinion.

## I. BACKGROUND

Dyce pled guilty to conspiracy to commit the offense of possession with intent to distribute crack cocaine, in violation of 18 U.S.C. § 371 (1994). At the taking of the plea, which was made pursuant to a plea agreement, Dyce described her role in the crime, which was essentially that of a courier or "mule." The presentence report calculated the adjusted offense level at 34. Because Dyce had accepted responsibility, however, her offense level was reduced to 32; and because she had no prior convictions, her criminal history was designated as category I. The Guidelines prescribe an imprisonment range of from 121 to 151 months for individuals having this offense level. The maximum statutory penalty for Dyce's crime, however, is 60 months; as a consequence, the Guidelines reduce the prescribed sentence to

five years. *See* 18 U.S.C. § 371; U.S.S.G. § 5G1.1(a).

Dyce's presentence report indicated that she was an alien and the mother of two young children, and that she was expecting a third. Although unmarried, she and the father of her children lived with her mother, father, and sister, all three of whom claimed to be employed. The author of the presentence report was unable to verify Dyce's own claims of employment during the six years prior to her arrest.

Dyce filed a sentencing memorandum in which she requested that the district court depart downward from the Guidelines sentence. She offered the following grounds for the departure: (1) her family responsibilities were "extraordinary"; (2) the offense was an act of aberrant behavior; (3) the sentence imposed by the Guidelines for a crack cocaine offense has a disproportionately severe effect on black defendants; (4) because she was an alien, she would be subject to more severe prison conditions than would similarly situated U.S. citizens; and (5) the combination of the previous four factors warranted a reduction in her sentence.

Dyce had three sentencing hearings. At the first, on June 20, 1994, the district court expressed concern over separating Dyce from her children. The court dismissed the Government's suggestion that the children live with their father with the comment that "kids are always better off living with the mother." Transcript of 6/28/94 Sentencing Hearing at 11. The sentencing hearing was continued without objection from the Government because Dyce was seven months pregnant at the time.

At the resumed hearing in September 1994, the district court indicated its unwillingness to impose a sentence that would separate Dyce from her children, including her newborn. The court stated:

> The problem you have with small children is nobody really can take care of these kids.
>
> \*      \*      \*      \*      \*      \*

What are our alternatives then? Take the kids away, put the kids in a foster home, a little baby like that? Can't do that.

&ast; &ast; &ast; &ast; &ast; &ast;

Well, I mean, we can't take this baby, this is ridiculous. Did you hear that? She's breast feeding the child. How can we take—we can't put her away. It's just impossible.

Transcript of 9/19/94 Sentencing Hearing at 7, 9, 14.

At the final hearing, on October 19, 1994, the court inquired whether Dyce was still breast-feeding her youngest child. When she replied that she was, the court stated: "Well, I can't take the youngster away from the mother at this stage." Transcript of 10/19/94 Sentencing Hearing at 12. The court then sentenced Dyce to five years of probation, with the condition that she serve two years in a residential treatment program, to be followed by one year in a community correctional facility or halfway house.

The court later issued an opinion setting forth the basis for its departure from the five years of imprisonment required by the Sentencing Guidelines. The court found that Dyce's case presented extraordinary family circumstances because

> [t]he Defendant is a single mother with three children under the age of four years old, one of whom is three months old and is being breast fed by the Defendant. At this point in time, the infant is totally dependent on the Defendant for nourishment. While these family circumstances do not decrease the Defendant's culpability for her crime, these family circumstances nevertheless play a role in the Court's consideration on sentencing. Causing the needless suffering of young, innocent children does not promote the ends of justice.

*United States v. Dyce,* 874 F.Supp. 1, 1–2 (D.C.Cir.1994). The court also stated that the totality of the circumstances supported a downward departure. These included Dyce's lack of a criminal record or history of substance abuse, her remorse, her full explanation of her role in the crime, the aberrational nature of her conduct, and her ability to contribute to society in a meaningful way. *Id.*

## II. DISCUSSION

### A. Standard of Review

The Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 *et seq.,* 28 U.S.C. §§ 991–98 (1995), allows district courts to depart from the sentencing levels established by the Guidelines if

> the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

18 U.S.C. § 3553(b); *see also* U.S.S.G. § 5K2.0, p.s.

■ The Commission has instructed district courts to "treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes," and to consider a departure only when the court "finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm...." U.S.S.G. Ch. 1, Pt. A, intro. comment., at 4(b). As the Supreme Court has held, appellate review of sentencing departures is narrow in scope and entails two distinct inquiries:

> First, was the sentence imposed either in violation of law or as a result of an incorrect application of the Guidelines? If so, a remand is required under [18 U.S.C.] § 3742(f)(1). If the court concludes that the departure is not the result of an error in interpreting the Guidelines, it should proceed to the second step: is the resulting sentence an unreasonably high or low departure from the relevant guideline range? If so, a remand is required under § 3742(f)(2).

*Williams v. United States,* 503 U.S. 193, 202, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992).

■ Anticipating *Williams,* we have treated the first step of the inquiry as consisting of two parts. *See United States v. Jones,* 948 F.2d 732, 736 (D.C.Cir.1991). First, we determine whether the district

court's reasons for the departure are, as a matter of law, " 'of a kind or degree that may appropriately be relied upon to justify departure.' " *Id.* (quoting *United States v. Diaz–Villafane,* 874 F.2d 43, 49 (1st Cir.1989)). Second, we determine whether the district court's factual findings are clearly erroneous. *Id.* Finally, we review the extent of a departure (step two of the *Williams* analysis) under a standard of reasonableness. *Id.*

### B. Extraordinary Family Circumstances

■ Congress has directed the Sentencing Commission to "assure that the guidelines and policy statements ... reflect the general inappropriateness of considering the ... family ties and responsibilities ... of the defendant." 28 U.S.C. § 994(e). Pursuant to this statutory mandate, the Commission has provided that "[f]amily ties and responsibilities ... are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.6, p.s. The courts of appeals that have considered the issue unanimously agree that this section, by negative implication, permits departures when family circumstances are "extraordinary." *See United States v. Canoy,* 38 F.3d 893, 906 (7th Cir. 1994), and cases cited therein.

The issue, then, is what constitutes "extraordinary" family ties and responsibilities. At the risk of stating the obvious, we note that the "extraordinary" can be defined only in relation to the "ordinary"; and at the risk of belaboring the obvious, we add that ordinary family responsibilities can be very great. Nevertheless, while

> [i]t may not be unusual, for example, to find that a convicted drug offender is a single mother with family responsibilities, ... at some point, the nature and magnitude of family responsibilities (many children? with handicaps? no money? no place for children to go?) may transform the "ordinary" case of such circumstances into a case that is not at all ordinary.

*United States v. Rivera,* 994 F.2d 942, 948 (1st Cir.1993).

■ The issue is admittedly a murky one; nevertheless, we underscore what is implicit in the word "extraordinary" and explicit in the Guidelines themselves: departures on such a basis should be rare. Because the Commission considered family circumstances in formulating the Guidelines, even if only by following the congressional mandate to reflect the "general inappropriateness of considering ... family ties and responsibilities," 28 U.S.C. § 994(e), a court may depart on this basis only if the case "*significantly* differs from the norm." U.S.S.G. Ch. 1, Pt. A, intro. comment., 4(b) (emphasis added).

■ We have never squarely addressed the proper standard of review applicable to a district court's departure from the Guidelines on the basis of "extraordinary" circumstances. The Government argues that *de novo* review is appropriate. We disagree. The question before us is not whether, as a matter of law, extraordinary family circumstances constitute grounds for departure; that question has already been answered in the affirmative. The question is whether, in the factual context of a particular case, extraordinary family circumstances exist. As then-Chief Judge Breyer observed in *Rivera,*

> [t]he district court's decision that circumstances are of a "kind," or "degree," that warrant departure will *not* involve a "quintessentially legal" interpretation of the words of a guideline, but rather will amount to a judgment about whether the given circumstances, as seen from the district court's unique vantage point, are usual or unusual, ordinary or not ordinary, and to what extent. A district court may well have a special competence in making this kind of determination, because it may have a better "feel" for the unique circumstances of the particular case before it.

994 F.2d at 951 (emphasis in original).

■ Accordingly, a district court's determination that extraordinary family circumstances exist will be entitled to considerable respect on appeal. *Id.* at 952; *Canoy,* 38 F.3d at 908; *see also United States v. Alba,* 933 F.2d 1117, 1122 (2d Cir.1991); *cf. United States v. Kim,* 23 F.3d 513, 517 (D.C.Cir. 1994) ("due deference" will be given "to the district court's application of the guidelines to facts"). Here, however, the district court has offered no reasons for distinguishing the

family situation in this particular case from that of the ordinary one in which a single mother is sentenced and jailed for a drug offense pursuant to the Guidelines. To the contrary, the record suggests that Dyce's incarceration would have less of an adverse effect on her family than would normally be expected in such cases. Therefore, we see no need to await the outcome of the Supreme Court's consideration of this precise standard of review question in *Koon v. United States*, —— U.S. ——, 116 S.Ct. 39, 132 L.Ed.2d 920 (1995) (granting *certiorari*).

▪ In its Sentencing Opinion, the district court describes Dyce as "a single mother with three children under the age of four years old, one of whom is three months old and is being breast fed by the Defendant." 874 F.Supp. at 1–2. Earlier, at the second sentencing hearing, the court commented that Dyce's incarceration would require placing the children in a foster home. That last concern, however, has proven ill-founded. While it is true that Dyce is unmarried, she was not living alone. To the contrary, as the presentence report indicated and as the Government observed at the sentencing hearings, at the time of her arrest, Dyce was living not only with the father of her children but also with her parents and sister, who were employed. The probation officer was unable to confirm that Dyce herself had been gainfully employed during the six years preceding her arrest; there is thus no evidence in the record indicating that Dyce currently shoulders the financial burden of raising her children. The record also confirms that the children could and would be cared for by members of her family. Indeed, at the time of the final sentencing hearing, the eldest child was living with his father in Brooklyn, while the second child was living with Dyce's mother and sister in England.

In those cases that have approved departures based on extraordinary family responsibilities, defendants have made far more convincing showings of special hardships or needs than has Dyce. *See, e.g., United States v. Gaskill*, 991 F.2d 82 (3d Cir.1993) (defendant was the sole provider for his wife, who had been manic-depressive for 30 years and was unable to leave the house or take

care of herself); *United States v. Peña*, 930 F.2d 1486, 1494–95 (10th Cir.1991) (defendant, a single mother, was steadily employed and was the source of support for an infant, a 16-year-old daughter, and the latter's infant).

The only factor that even arguably removes this case from the relevant heartland of cases is Dyce's breast-feeding of her youngest child. The Sentencing Opinion observed that the infant is "totally dependent on [Dyce] for nourishment." 874 F.Supp. at 2. It is clear from the record that this fact weighed heavily in the district court's decision.

▪ As a preliminary matter, we note that Dyce's youngest child was conceived after her arrest. Courts are extremely reluctant to take pregnancy into consideration under such circumstances. *See United States v. Pozzy*, 902 F.2d 133, 139 (1st Cir.1990) ("to allow a departure downward for pregnancy could set a precedent that would have dangerous consequences in the future, sending an obvious message to all female defendants that pregnancy is 'a way out' "). Furthermore, there is no evidence in the record supporting the district court's statement in its Sentencing Opinion that the infant was "totally dependent on [Dyce] for nourishment," nor is there any evidence that the child could not have been fed from a bottle. But even if the court wished to take into account the generally accepted advantages of breast- over bottle-feeding, it could have accommodated Dyce by giving her the option of delaying the commencement of her sentence until after her baby had been weaned.

In sum, we can find nothing to suggest that Dyce's family circumstances were in any degree "extraordinary." To the contrary, hers were demonstrably better than those of many defendants who have been denied departures for extraordinary family responsibilities. *See, e.g., United States v. Webb*, 49 F.3d 636, 638 (10th Cir.) (defendant was sole caretaker and "loving and conscientious" parent of a son who had been on his school's honor roll before defendant's incarceration but had problems thereafter), *cert. denied*, —— U.S. ——, 116 S.Ct. 121, 133 L.Ed.2d 71 (1995); *United States v. Brown*, 29 F.3d 953, 961 (5th Cir.1994) (defendant

had two children under the age of five with undefined medical problems who would have to live with great-grandmother); *United States v. (John) Goff,* 20 F.3d 918, 921 (8th Cir.1994) (defendant, whose wife was disabled by depression and panic attacks, provided sole support for three young sons); *United States v. Chestna,* 962 F.2d 103, 107 (1st Cir.1992) (defendant was single mother of four young children, one of whom was born after sentencing); *United States v. Cacho,* 951 F.2d 308, 310 (11th Cir.1992) (defendant was mother of four young children). As the Fourth Circuit observed in *United States v. Brand,* 907 F.2d 31, 33 (4th Cir.1990),

> [i]t is apparent that in many cases the other parent may be unable or unwilling to care for the children, and that the children will have to live with relatives, friends, or even in foster homes. . . . [Defendant's] situation, though unfortunate, is simply not out of the ordinary.

In Dyce's case, her children received the willing care of relatives.

The unfortunate fact is that some mothers are criminals; and, like it or not, incarceration is our criminal justice system's principal method of punishment. A term in jail will *always* separate a mother from her children. While we will give due deference to a district court's determination that the impact of that separation will be extraordinary, the record contradicts the district court's finding that such would be the case here. Dyce "has shown nothing more than that which innumerable defendants could no doubt establish: namely, that the imposition of prison sentences normally disrupts . . . parental relationships. . . ." *United States v. Daly,* 883 F.2d 313, 319 (4th Cir.1989).

## C. Totality of the Circumstances

The district court found that other factors supported a downward departure:

> In sentencing, the Court must take into account the totality of the circumstances. Other circumstances in this case support the Court departing downward from the sentence guidelines. The Defendant in this case has no prior criminal record and no history of substance abuse. The Court finds that she is remorseful and that she

does not pose a threat to society. She fully explained her role in this case which was essentially a transporter of drugs from New York to a designation [sic] in North Carolina. The Defendant's conduct was aberrational in character and she is capable of contributing to society in a meaningful manner.

874 F.Supp. at 2.

■ The Sentencing Commission has authorized departures based on a combination of factors "even though none of the characteristics or circumstances individually distinguishes the case. *However, the Commission believes that such cases will be extremely rare.*" U.S.S.G. § 5K2.0, comment. (emphasis added). In addressing this issue, courts have uniformly held that factors already considered by the Sentencing Commission cannot be combined to form a "unique combination" justifying departure. *See United States v. Ziegler,* 39 F.3d 1058, 1063 (10th Cir.1994); *United States v. Berlier,* 948 F.2d 1093, 1097 (9th Cir.1991); *United States v. (Cheryl) Goff,* 907 F.2d 1441, 1447 (4th Cir. 1990). As demonstrated below, none of the factors cited by the district court can serve as a basis for departure either because they have already been considered by the Commission or because they are not properly invoked in this case.

### 1. No Prior Record/No Threat to Society

■ In reducing the sentence, the district court relied in part on Dyce's lack of a prior criminal record and on its conclusion that she did not pose a threat to society. It is clear from the Guidelines that the Commission took both of these factors into consideration when it made provision for first offenders:

> The lower limit of the range for Criminal History Category I *is set for a first offender with the lowest risk of recidivism.* Therefore, a departure below the lower limit of the guideline range for Criminal History Category I on the basis of the adequacy of criminal history cannot be appropriate.

U.S.S.G. § 4A1.3, p.s. (emphasis added). Thus, the Commission has expressly forbid-

den a downward departure "even for defendants who may be unusually unlikely to commit crimes in the future." *United States v. Koon,* 34 F.3d 1416, 1457 (9th Cir.1994), *cert. granted,* —— U.S. ——, 116 S.Ct. 39, 132 L.Ed.2d 920 (1995).

### 2. Remorse/Full Explanation

The district court also cited Dyce's remorse and her "full explanation" of her role in the crime. The Government argues that the Commission considered both of these factors when it authorized a two-level decrease in the offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense...." U.S.S.G. § 3E1.1(a). Because Dyce was granted a two-level reduction pursuant to section 3E1.1(a), the Government correctly contends that a further reduction is prohibited for an acceptance of responsibility.

■■■ With respect to the factor of remorse, we note that that word is defined as "a gnawing distress arising from a sense of guilt for past wrongs." Webster's Ninth New Collegiate Dictionary (1985). While "acceptance of responsibility" may be an essential component of "remorse," the latter is not a necessary element of the former. A person can accept responsibility for a crime ("yes, I killed my wife") without feeling remorse ("she had it coming"). In its commentary, however, the Commission made it clear that it contemplated a moral element to the section 3E1.1 reduction. *See* U.S.S.G. § 3E1.1 comment., (n. 1) (in determining whether departure warranted, courts may consider, among other factors, the voluntary termination of criminal conduct, voluntary payment of restitution, voluntary surrender to the authorities, and post-offense rehabilitative efforts); *see also United States v. McKinney,* 15 F.3d 849, 853 (9th Cir.1994) ("[t]he primary goal of the [§ 3E1.1] reduction is to reward defendants who are genuinely contrite"), *cert. denied,* —— U.S. ——, 116 S.Ct. 162, 133 L.Ed.2d 105 (1995). We hold, therefore, that implicit in the phrase "acceptance of responsibility," as used in section 3E1.1(a), is an admission of moral wrongdoing. *See United States v. Brewer,* 899 F.2d 503, 509 (6th Cir.1990) ("the factor of ... remorse was considered under the guidelines"). Accordingly, an expression of remorse cannot provide an independent ground for departure beyond the two-level reduction Dyce already received.

■■■ Nor may Dyce's explanation of her role as a courier serve to justify a departure from the guideline sentence. In the first instance, her acceptance of responsibility, for which her offense level was reduced from 34 to 32, necessarily required an acknowledgment that she was guilty as charged. We see no basis for granting her an additional reduction merely because she volunteered the details of her involvement in the crime. Indeed, there is nothing in the record to suggest that Dyce took any action beyond what is normally encompassed in an acceptance of responsibility. If anything, the opposite is true. Dyce disavowed responsibility for any wrongdoing through two suppression hearings. In denying her motion to suppress, the district court stated that she had "not be[en] truthful about a number of the events to which she testified." *United States v. Dyce,* 842 F.Supp. 14, 19 (D.D.C.1993). Dyce's full explanation of her role in the crime would not come until several months later, when she agreed to plead guilty.

Moreover, the Sentencing Guidelines make specific provision for a downward departure where a defendant supplies substantial assistance to the Government, but only where the Government certifies to the district court that the help received has been of sufficient value to warrant the departure. *See* U.S.S.G. § 5K1.1; *see also United States v. Jones,* 58 F.3d 688, 691 (D.C.Cir.) ("under section 5K1.1 ... a motion of the Government is a prerequisite to the exercise of judicial discretion to depart below the Guidelines range"), *cert. denied,* —— U.S. ——, 116 S.Ct. 430, 133 L.Ed.2d 346 (1995). In light of the above, it cannot be said that the Commission failed to take into account that a defendant, such as Dyce, might provide the details of her complicity in a crime.

### 3. Aberrational Behavior

■■■ In granting the departure, the district court also relied on its conclusion that Dyce's actions had been "aberrational." This finding would appear to be based on the facts

that Dyce had never been convicted of a crime and had no history of substance abuse. In the introduction to the Guidelines, the Sentencing Commission states that it has "not dealt with ... single acts of aberrant behavior that still may justify probation at higher offense levels through departures." U.S.S.G. Ch. 1, Pt. A, intro., comment., 4(d). Because the Commission has not considered such behavior, a district court may depart from the guideline sentence on a finding that the defendant had acted aberrationally.

■ Our sister circuits disagree as to the meaning of aberrant behavior. The Fifth and Seventh Circuits have concluded that such behavior "generally contemplates a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning." *United States v. Carey*, 895 F.2d 318, 325 (7th Cir.1990); *United States v. Burleson*, 22 F.3d 93, 94 (5th Cir. 1994) (same). On the other hand, the Ninth Circuit would include within what it describes as an "aberrant behavior spectrum" not only a single spontaneous act, but "a whole series of acts [that] lead up to the commission of [a] crime." *United States v. Takai*, 941 F.2d 738, 743 (9th Cir.1991).

We share the view of the Fifth and Seventh Circuits; the Ninth Circuit's approach would have the effect of converting any first crime into an aberration. In the present case, Dyce cannot claim to have acted on impulse or without some degree of planning. Her train reservation to North Carolina for the purpose of carrying drugs was made two days before she boarded. She had ample time to consider the nature of the activity on which she had agreed to embark. It may have been out of character for her to have succumbed to the temptation of easy money for wrongful acts, but we cannot see how this would distinguish her case from that of others who embark on their first criminal venture. She had ample opportunity to reconsider her decision to transport drugs. Therefore, her act must be deemed to have been both well considered and willful, not aberrational.

#### 4. Contribution to Society

■ Like family responsibilities, a defendant's education, employment record, and various good works are "not ordinarily relevant" in determining departures. U.S.S.G. § 5H1.2, p.s., § 5H1.5, p.s., and § 5H1.11, p.s. These factors may be said to be indicia of a person's capacity to contribute to society. Before a district court departs on this basis, it must not only find that the defendant is likely to make such contributions, but that he is likely to make them to an extraordinary degree. *See United States v. Reilly*, 33 F.3d 1396, 1424 (3d Cir.1994).

■ In the present case, the district court found that Dyce was "capable of contributing to society in a meaningful manner." 874 F.Supp. at 2. We have searched the record for any factual basis for this finding but have found none. The writer of the presentence report was unable to verify Dyce's claims of recent employment; nor could he confirm that she had been graduated from high school. Furthermore, the record contains nothing to suggest that Dyce would be likely to use her talents for the benefit of others. Defendants who have made convincing showings of their utility to society have been denied departures on this basis. *See, e.g., Ziegler*, 39 F.3d at 1062 ("While [the defendant's] background and personal achievements are certainly praiseworthy, ... they nevertheless do not warrant a departure from the guideline sentencing range."); *United States v. Desormeaux*, 952 F.2d 182, 185 (8th Cir.1991) ("While [the defendant] is to be commended on her successful efforts in advancing her education, her post-arrest achievement is not sufficiently extraordinary to warrant a downward departure."). Although we share the district court's hope that Dyce will contribute meaningfully to society upon completing her sentence, hope alone cannot justify a departure.

#### D. Factors Not Relied on by the District Court

Dyce argues in favor of the downward departure for two reasons not mentioned by the district court in its Sentencing Opinion. She maintains that her status as a deportable alien may subject her to more severe prison conditions than an otherwise similarly situated U.S. citizen and that the disparity in the

offense levels accorded crimes involving crack cocaine and cocaine powder discriminates against black defendants. Dyce presented both of these arguments to the district court, but the court did not rely on them in explaining its downward departure.

█ We need not consider Dyce's arguments for a departure based on either her alien status or the Guidelines' alleged discriminatory effects on black defendants. As the Supreme Court explained in *Williams v. United States*, 503 U.S. 193, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992), "once the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, *i.e.,* that the error did not affect the district court's selection of the sentence imposed." *Id.* at 203, 112 S.Ct. at 1120–21 (citing Fed.R.Crim.P. 52(a)). We have rejected all of the grounds on which the district court relied in departing downward; and, given the district court's failure even to mention Dyce's final two arguments, we cannot conclude "that the district court would have imposed the same sentence absent the erroneous factor[s]." *Id.* at 203, 112 S.Ct. at 1121. We thus remand without addressing Dyce's final two arguments.

### III. CONCLUSION

In determining whether "extraordinary" family circumstances exist in a particular case, a district court should focus on the effects of a defendant's sentence on innocent third parties. In the present case, Dyce's family is clearly able and willing to take care of her children. Accordingly, the district court erred in finding the existence of extraordinary family circumstances. Furthermore, none of the other factors cited by the court remove this case from the relevant "heartland" that the Commission had taken into account in fashioning the Guidelines. Accordingly, the sentence of Amrhu Dyce is vacated and the case remanded for resentencing consistent with this opinion.

*So ordered.*