132 F.3d 56

**UNITED STATES of America, Appellee,**

v.

**Lynn M. SOTO, a/k/a Linn Johnson, Appellant.**

**No. 97–3002.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 19, 1997.

Decided Dec. 30, 1997.

**2**

Jerome A. Ballarotto, Trenton, NJ, argued the cause and filed the brief for appellant.

Thomas C. Black, Assistant U.S. Attorney, Washington, DC, argued the cause for appellee. With him on the brief were Eric H. Holder, Jr., U.S. Attorney at the time the brief was filed, John R. Fisher, Robert A. Spelke and Laura A. Cordero, Assistant U.S. Attorneys.

Before: EDWARDS, Chief Judge, TATEL, Circuit Judge and BUCKLEY, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

Even though appellant appeared to satisfy the standards for a downward adjustment of her sentence under section 3B1.2 of the U.S. Sentencing Guidelines for minimal or minor participation, her lawyer failed to request one. Finding this omission to be ineffective assistance of counsel, we remand this case so the district court can determine whether appellant in fact qualifies for a lesser sentence.

## I

Recognizing that not all offenders are equally culpable, the Sentencing Guidelines authorize reduced sentences for defendants whose participation in illegal conduct was minor, minimal, or somewhere in between. Section 3B1.2 instructs:

Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. § 3B1.2 (1995). According to the application notes, the reduction "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2 comment. (n.1). As illustrations of "least culpable" participants, the Guidelines refer to "an individual [ ] recruited as a courier for a single smuggling transaction involving a small amount of drugs," *id.* n. 2, and "someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment," *id.*

When appellant Lynn Soto was approached by a drug dealer named "City," she had neither a criminal record nor a history of drug abuse. According to the prosecutor, City offered her money to take a package of drugs from New York to Rocky Mount, North Carolina. Having just lost her full-time job and later described by the probation officer as depressed at the time, Soto agreed. City gave her a round-trip Amtrak train ticket, issued in the name of Linn Johnson (the alias in the caption of this case), and placed a duct-taped package in her bag. Nothing in the record suggests that Soto knew how much drugs City had given her. During a stop in Washington, D.C., a U.S. Drug Enforcement Agency officer boarded the train, searched Soto's bag, and discovered the duct-taped package. It contained 181.33 grams of powder cocaine and 235.24 grams of cocaine base or crack, worth approximately $43,000. The government charged Soto with one count each of possession with intent to distribute cocaine and possession with intent to distribute crack. She pled guilty to the cocaine count.

At sentencing, the district court accepted the recommendations of the probation officer contained in the presentence investigation report. Based on the amount of drugs in her bag, the court assigned Soto a base offense level of thirty-four, with a three-point reduction for acceptance of responsibility. On its own motion, the court gave her an additional two-point reduction because she met the "safety valve" criteria. *See* U.S.S.G. §§ 2D1.1(b)(4), 5C1.2. The twenty-nine point total produced a sentencing range of 87–108 months.

Although offering no objection to the presentence report, Soto's lawyer argued in two separate sentencing memoranda that the court should depart downward under section 5K2.0 because of Soto's extraordinary circumstances: She was a first-time offender supporting a disabled child by herself, she played a minor role in the trafficking scheme, her conduct was aberrational, she showed remorse, and she had no history of substance abuse. Counsel relied heavily on a district court decision with similar facts, but we reversed that case prior to Soto's sentencing. *See United States v. Dyce,* 874 F.Supp. 1 (D.D.C.1994), *vacated by* 78 F.3d 610 (D.C.Cir.), *amended and superseded by and reh'g denied by* 91 F.3d 1462 (D.C.Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 533, 136 L.Ed.2d 418 (1996). Finding no extraordinary circumstances, the district court declined to depart below the Guideline range, sentencing Soto to eighty-seven months, the lowest point on the range.

Now with new counsel, Soto makes three arguments on appeal: that trial counsel was ineffective for failing to request downward adjustment under section 3B1.2; that the district court should have adjusted the sentence on its own motion; and that the district court misunderstood its authority to depart downward under section 5K2.0. We consider each argument in turn.

## II

■ Pointing to a single reference to section 3B1.2 in each of appellant's sentencing memoranda, the government argues that counsel raised the minimum participation issue and was therefore not ineffective. We disagree. To "raise" the issue properly, counsel had to do more than simply mention the provision; he had to "*specifically* [ ] request an adjustment under section 3B1.2." *United States v. Foster,* 988 F.2d 206, 210 (D.C.Cir.1993) (emphasis added). In this case, counsel did no more than cite section 3B1.2 in the course of arguing for a downward *departure* under section 5K2.0, a much tougher standard to meet. Not only did he fail to challenge the presentence report, which made no reference to section 3B1.2, but his two sentencing memoranda rely only on section 5K2.0. In one memorandum, he described the only issue before the district court as "[w]hether the Court may depart downward from the mandatory sentencing guidelines range ... upon a showing of the defendant's extraordinary family circumstances, aberrant behavior, and lack of criminal record." The memorandum concluded: "Based upon the foregoing arguments and authorities, and the record before this Court, Defendant respectfully urges this Honorable Court to grant a downward departure from the Federal Sentencing Guidelines *as permitted by U.S.S.G. § 5K2.0*" (emphasis added).

■ Describing Soto's role as minimal or minor is insufficient to raise the section 3B1.2 issue; counsel cannot properly invoke a particular Guideline provision " 'merely by reciting to the court a list of mitigating facts.' " *Id.* (quoting *United States v. Sergio,* 934 F.2d 875, 881 (7th Cir.1991)). This is particularly true where, as here, the guideline requires the district court to make empirical judgments and where factual subtleties can make a real difference. Whether Soto's role was minimal or minor, as well as whether she would receive a two, three, or four-point reduction, depends on the particular facts of the case and how well counsel marshals them: For example, did Soto play a particularly passive role or have little or no knowledge of the larger distribution scheme? Was she sentenced based on relevant conduct in which other actors played a part? Do other circumstances demonstrate that her culpability was less than others involved in the scheme? *Compare United States v. Olibrices,* 979 F.2d 1557, 1559–61 (D.C.Cir.1992) (courier who was part of larger operation

held responsible for the drugs that she was carrying and was not entitled to an adjustment for minor participation), *with United States v. Caballero*, 936 F.2d 1292, 1298 (D.C.Cir.1991) (single defendant courier entitled to section 3B1.2 consideration). Developing these issues requires more than just reciting the words "minimal participant."

■ Turning to the substance of Soto's ineffectiveness claim and applying the familiar two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), we ask whether counsel's performance fell below professional standards and, if so, whether it prejudiced Soto. Generally, we do not resolve ineffectiveness claims on direct appeal except in those rare circumstances where the record is so clear that remand is unnecessary. *United States v. Fennell*, 53 F.3d 1296, 1303–04 (D.C.Cir.1995) (ineffectiveness claims may be decided on appeal without additional fact-finding either "when the trial record alone conclusively shows that the defendant is entitled to no relief . . . [or] when the trial record conclusively shows the contrary"). This is one of those clear cases.

■ " '[F]amiliarity with the structure and basic content of the Guidelines,' " we have explained, " 'has become a necessity for counsel who seek to give effective representation.' " *United States v. Gaviria*, 116 F.3d 1498, 1512 (D.C.Cir.1997) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir.1992)). In *Gaviria*, defendant met *Strickland*'s first test because his lawyer, ignoring case law interpreting the Guidelines' career offender provision, gave him flawed advice, which influenced his decision to go to trial. The same principle applies where, as here, counsel ignores a relevant Guideline provision altogether. Whether lawyers get the Guidelines wrong by misinterpreting the implication of a particular provision (*Gaviria*) or by failing altogether to raise a potentially helpful provision (this case), such drastic missteps clearly satisfy *Strickland*'s first test: They amount to errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *see United States v. Headley*, 923 F.2d 1079, 1083–84 (3d Cir.1991) (counsel's failure to seek potentially fruitful downward adjustment under section 3B1.2 fell outside "prevailing professional norms" and therefore was ineffective).

■ Soto satisfies *Strickland*'s prejudice test as well: There is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Not only would downward adjustment have reduced Soto's sentence by at least seventeen months (two-point adjustment) or by as much as two and one-half years (four-point adjustment), but according to section 3B1.2's application notes, Soto is precisely the sort of person the minimal/minor participation provision covers. She sought out no illegal activity herself; instead, she was "recruited [by City] as a courier for a single smuggling transaction," U.S.S.G. § 3B1.2 comment. (n.2). She "lack[ed] knowledge or understanding of the scope and structure of the enterprise and of [City's] [ ] activities," *id.* n. 1, she knew nothing about what she would be paid, and perhaps not even how much contraband she carried. Although it is not for us to decide whether Soto's sentence should be reduced—"[t]he application of section 3B1.2 is inherently fact-bound and largely committed to the discretion of the trial judge," *Caballero*, 936 F.2d at 1299—we cannot imagine a defendant better suited for serious consideration under section 3B1.2 or more squarely prejudiced by counsel's failure to raise it. The government's claim, advanced both in its brief and at oral argument, that counsel was not ineffective for failing to raise a losing argument, thus lacks merit. Indeed, we are surprised that the United States, relying on a record so obviously flawed by the failings of constitutionally ineffective counsel, would even offer such a theory.

### III

■ In view of our conclusion that counsel was ineffective, we need not reach Soto's alternative argument that the district court committed plain error in failing to address section 3B1.2 on its own. As for her final contention that the court misunderstood its

authority to depart from the Guidelines under section 5K2.0, we have no reason to believe that the district court misconstrued our analysis in *United States v. Dyce* that it could depart either if it found "extraordinary family circumstances" or an "extremely rare" combination of other factors. *See Dyce,* 91 F.3d at 1466–71 (defendant's family responsibilities, lack of prior record, remorse, and allegedly positive societal contributions insufficient to warrant departure). Since the court expressly concluded that no such exceptional circumstances or factors existed, we must uphold its decision. *United States v. Pinnick,* 47 F.3d 434, 439 (D.C.Cir.1995).

We remand this case for further proceedings. Because Soto's eligibility for a section 3B1.2 adjustment depends upon further factfinding by the district court, we will not vacate the sentence, instead leaving it to the district court to determine whether a revised sentence is in order and, if so, to fashion one consistent with the Guidelines.

*So ordered.*