**UNITED STATES of America**

v.

**Opeyemi M. AKINTOMIDE, Defendant.**

**No. CRIM.97–263(RMU).**

United States District Court,
District of Columbia.

April 17, 2001.

Robert Daniel Okun, U.S. Attorney's Office, Washington, DC, for U.S.

Neil Howard Jaffee, Federal Public Defender for D.C., Washington, DC, for defendant.

### MEMORANDUM OPINION

URBINA, District Judge.

### Granting the Defendant's Motion for Reconsideration of Sentence

## I. INTRODUCTION

Mr. Opeyemi M. Akintomide last appeared before this court in December 1997 for sentencing on a drug-related offense. Since then, his case has taken a number of procedural turns through the D.C. Circuit. Mr. Akintomide has now returned to this court on remand from the Court of Appeals for reconsideration of his 1997 sentence. In the interest of clarity, the court will briefly describe the procedural history of the case before addressing the merits of Mr. Akintomide's motion for reconsideration

## II. PROCEDURAL HISTORY

On June 26, 1997, a grand jury returned an indictment charging the defendant with Unlawful Possession with Intent to Distribute 500 Grams of Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii). On August 15, 1997, this court denied the defendant's motion to suppress tangible evidence and post-arrest statements. *See* Tr. of Mot. Hr'g dated Aug. 15, 1997 ("Tr. I") at 31. Thereafter, the defendant entered a plea of guilty to the charged offense. *See* Tr. of Plea Hr'g dated Aug. 20, 1997 ("Tr.II") at 2. On August 21, 1997, having learned that the drug involved in the offense was heroin, not cocaine, the

grand jury returned a superseding indictment charging the defendant with Unlawful Possession and Intent to Distribute 100 Grams or More of Heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(i). The defendant pleaded guilty to this charge on September 8, 1997.

On December 3, 1997, the court sentenced the defendant to 78 months in prison, 5 years of supervised release, and a special assessment of $100.00. The defendant immediately appealed to the D.C. Circuit on the ground that he received ineffective assistance of counsel in violation of the Sixth Amendment to the U.S. Constitution. To this end, the defendant advanced two arguments: first, that his attorney had failed to present adequate evidence at the suppression hearing; and second, that his attorney had failed to request a reduction in his offense level under section 3B1.2 of the U.S. Sentencing Guidelines ("U.S.S.G.").[1]

On April 22, 1999, a three-judge panel of the D.C. Circuit rejected the defendant's claim that he had received ineffective assistance of counsel at the suppression hearing. On that same day, the full Court *sua sponte* ordered an *en banc* rehearing of the defendant's second claim, namely, whether the failure to request a sentence reduction under U.S.S.G. § 3B1.2 constituted ineffective assistance of counsel. Before the rehearing took place, however, the government changed its position on the proper scope of section 3B1.2. Specifically, the government repudiated its earlier position that the defendant was *per se* ineligible for a downward adjustment under section 3B1.2. Instead, the government argued that there was no *reasonable like-*

---

1. As described in greater detail below, Section 3B1.2 (Mitigating Role) allows the court to decrease the defendant's offense level for "minimal" or "minor" participation in the concerted illegal activity.

*lihood* that the defendant, who was held accountable only for the drugs he carried, would have been able to demonstrate that he was entitled to a downward sentence adjustment under section 3B1.2.

As a result of the government's change in position, the full *en banc* panel of the Court of Appeals returned the case to the original three-judge panel. The panel then remanded the case to this court for "reconsideration in light of the government's changed position." In response, on April 30, 2000, this court ordered the parties to submit memoranda regarding defense counsel's failure to request a downward adjustment pursuant to U.S.S.G. § 3B1.2.

## II. BACKGROUND

### A. The Offense

On June 2, 1997, Officer Barbara Lyles, a plainclothes police officer with the D.C. Metropolitan Police Department ("MPD"), approached Mr. Akintomide in the Greyhound Bus Station in Northeast Washington, D.C. *See* Tr. of Mot. Hr'g dated Aug. 14, 1997 ("Tr.III") at 8–10. Mr. Akintomide had just stepped off a bus arriving from Cleveland, Ohio. *See id.* Officer Lyles identified herself as a police officer and explained that she was speaking to bus passengers to determine whether they were carrying drugs or guns. *See id.* at 12–13. Mr. Akintomide, who appeared nervous, told Officer Lyles that Washington, D.C. was his final destination but that he did not know the name of his hotel or how long he intended to stay. *See id.* at 13, 34–35.

Officer Lyles then conducted a consent search of Mr. Akintomide's bag and retrieved $1,000 in cash and six "hard object[s] that had red pepper or cayenne pepper around [them]." *See id.* at 12, 14, 18, 21–22. Aware that red pepper and cayenne are often used to camouflage the smell of drugs from dog sniffs, Officer Lyles confirmed that the six objects contained narcotics and signaled for the other members of the MPD drug-interdiction unit to arrest Mr. Akintomide. *See id.* at 14.

At the police station, the defendant waived his *Miranda* rights and confessed that he was transporting narcotics to Washington, D.C. at the request of a man from Chicago named Babatunde. *See id.* at 69. The defendant explained that in June 1997, Babatunde—who was his mother's boyfriend—asked him to travel to Cleveland to pick up a package. *See id.* Babatunde took the defendant to the bus station in Chicago, bought him a ticket to Cleveland, and placed him on the bus. *See id.* Babatunde instructed the defendant that he was to meet an individual named Olatunde, whom the defendant did now know, outside the Cleveland bus station. *See* PSR ¶ 7. In accordance with these instructions, the defendant met Olatunde outside the bus station. *See id.* Olatunde, who was wearing "flashy clothes" and driving a "flashy car," gave the defendant $1,000 in cash and a black tote bag, and instructed him to deliver the bag to an unidentified person at the D.C. Greyhound Station. *See id.* The defendant claimed that he did not know what the bag contained, but assumed it was drugs or other contraband. *See* Presentence Investigation Report ("PSR") at 4. The defendant described both Babatunde and Olatunde to the police and provided additional information to assist in locating the two men. *See* Tr. III at 69–70.

### B. The Presentence Report

Under the Federal Rules of Criminal Procedure, a probation officer generally must prepare a "Presentence Report" (PSR) and submit it to the court before a sentence is imposed. *See* FED. R. CRIM.

P. 32(b)(1). The PSR must contain, among other things: information about the defendant's history and characteristics, including any prior criminal record; the classification of the defendant and his offense under categories established by the Sentencing Commission in 28 U.S.C. § 994(a); and the kinds of sentence and the sentencing range suggested for such a category of offense committed by such a category of defendant as set forth in 28 U.S.C. § 994(a)(1). *See* FED. R. CRIM. P. 32(b)(4)(A) and (B).

In the PSR submitted in this case, the probation officer determined that the base offense level for the defendant's offense was 30. The probation officer then reduced the offense level by three points, to 27, because the defendant had timely accepted responsibility for the offense. *See* U.S.S.G. § 3E1.1. The probation officer also indicated that the defendant had no prior involvement with drug trafficking. *See* PSR. The Probation Office assigned a criminal history category of II to the defendant based on a prior shoplifting conviction for which the defendant was on probation at the time of his arrest for the instant offense. The corresponding Sentencing Guidelines range of imprisonment for the defendant's offense was 78 to 97 months. *See id.*

### C. The Sentencing

The charged offense in this matter was the defendant's first felony conviction as well as his first drug-related conviction. *See* PSR at 5. At the sentencing hearing, defense counsel remarked that "there should be some way that the court should have some discretion to give [the defendant] a sentence of less than 78 months if the court is so inclined to grant him a sentence at the low end of the guidelines." Tr. of Sentence Hr'g dated Dec. 3, 1997 ("Tr.IV") at 5. Defense counsel did not,

however, request a downward sentence adjustment under U.S.S.G. § 3B1.2, nor did he adduce any other reason or authority for reducing the sentence below the mandatory minimum. The court ultimately accepted the findings and conclusions in the PSR and sentenced the defendant to a term of 78 months imprisonment, followed by a 5–year period of supervised release and a special assessment of $100. *See id.* at 7.

### III. LEGAL STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court articulated a two-part test for ineffective assistance of counsel. Under the first prong, the defendant must show that his counsel's performance "fell below an objective standard of reasonableness." *See id.* at 687, 104 S.Ct. 2052. If the defendant meets the first prong, he must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.; see also United States v. Burch*, 156 F.3d 1315, 1326 (D.C.Cir.1998), *cert. denied*, 526 U.S. 1011, 119 S.Ct. 1155, 143 L.Ed.2d 220 (1999); *accord United States v. Hoyle*, 33 F.3d 415, 418 (4th Cir.1994). In this context, a "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *United States v. Thompson*, 27 F.3d 671, 675 (D.C.Cir.1994) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). The court must begin with a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 688–89, 104 S.Ct. 2052. "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respect-

ed ... if they are based on professional judgment." *Id.* at 681, 104 S.Ct. 2052.

## IV. DISCUSSION

### A. Prong One: Defense Counsel's Failure to Seek Potentially Fruitful Downward Adjustment Under U.S.S.G. § 3B1.2 Falls Outside "Prevailing Professional Norms"

■ "Familiarity with the structure and basic contents of the Guidelines has become a necessity for counsel who seek to give effective representation." *United States v. Gaviria,* 116 F.3d 1498, 1512 (D.C.Cir.1997) (quoting *United States v. Day,* 969 F.2d 39, 43 (3d Cir.1992)). In *United States v. Soto,* 132 F.3d 56 (D.C.Cir.1997), the D.C. Circuit held that a defense lawyer's failure to seek a potentially fruitful downward adjustment under section 3B1.2 satisfied the first prong of *Strickland.* In *Soto,* defense counsel sought a downward adjustment for his client under U.S.S.G. § 5K2.0 in two separate sentencing memoranda and also referred once to section 3B1.2 in each memorandum. *See id.* at 58. The Court determined that it was not enough for defense counsel to simply mention section 3B1.2. *See id.* Rather, the Court interpreted *Strickland*'s professional-norm standard as requiring defense counsel to "*specifically* ... request an adjustment under section 3B1.2." *See id.* at 58 (emphasis added) (quoting *United States v. Foster,* 988 F.2d 206, 210 (D.C.Cir. 1993)). The Court explained that "[w]hether lawyers get the Guidelines wrong by misinterpreting the implication of a particular provision (*Gaviria*) or by failing altogether to raise a potentially helpful provision (this case), such drastic missteps clearly satisfy Strickland's first test." *Soto,* 132 F.3d at 59.

The instant case arguably involves an even more "drastic misstep" than the one in *Soto.* Unlike defense counsel in *Soto,* Mr. Akintomide's counsel did not mention section 3B1.2 in his sentencing arguments, much less seek such an adjustment by way of another Guideline provision. Rather, defense counsel stated in conclusory fashion that "there must be some way" for this court to give the defendant less than 78 months imprisonment. *See* Tr. III at 5. In short, defense counsel failed to demonstrate "familiarity with the structure and basic content of the Guidelines" as required by *United States v. Gaviria,* 116 F.3d at 1512. This was an error so serious as to deny the defendant his Sixth Amendment right to counsel. *See Soto,* 132 F.3d at 59. Accordingly, the court determines that defense counsel's failure to failure to request a downward adjustment under section 3B1.2 satisfies the first prong of the *Strickland* test because such representation fell outside the prevailing norms of professional conduct.

### B. Prong Two: There is a Reasonable Probability that the Defendant's Sentence Would Have Been Different but for Counsel's Unprofessional Errors

#### 1. Standard for Downward Adjustment Under Section 3B1.2

Under section 3B1.2 of the Sentencing Guidelines, the court may decrease the defendant's offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. § 3B1.2. The "minimal participant" provision of subsection (a) covers "defendants who are plainly among the

least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2 n. 1. "[T]he defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others" may indicate that he was a minimal participant. *Id.* By contrast, the *"minor* participant" provision of subsection (b) covers "any participant who is less culpable than most other participants, but whose role could not be described as minimal [under subsection (a) ]." *Id.* n. 3.

The Background Notes to the Sentencing Guidelines explain that section 3B1.2 "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant. The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, involves a determination *that is heavily dependent upon the facts of the particular case."* U.S.S.G. § 3B1.2, Background (emphasis added).

In addition, the D.C. Circuit has stated that "[t]he application of section 3B1.2 is inherently fact-bound and largely committed to the discretion of the trial judge." *United States v. Caballero,* 936 F.2d 1292, 1299 (D.C.Cir.1991); *see also* William W. Wilkins, Jr., *Plea Negotiations, Acceptance of Responsibility, Role of the Offender, and Departures,* 23 WAKE FOREST L. REV. 181, 194–95 (1988) (under section 3B1.2, "the courts should consider factors such as the exercise of decision-making authority, the degree of participation in the offense, recruitment of accomplices, a claim to a larger share of the profits from the enterprise, the nature and seriousness of the activity, and the degree of control exercised over others") (citing U.S.S.G. § 3B1.1, comment. (n.3)).

### 2. "Minor" Participation

■ To qualify as a "minor" participant under subsection 3B1.2(b), the defendant must, at a minimum, show that: (1) "the 'relevant conduct' for which the defendant would, within the meaning of section 1B1.3(a)(1), be otherwise accountable involved more than one participant (as defined in section 3B1.1, comment. (n.1));" and (2) "the defendant's culpability for such conduct was relatively minor compared to that of the other participant(s)." *See Caballero,* 936 F.2d at 1299. In *Caballero,* the D.C. Circuit described section 3B1.2 as a totality-of-the-circumstances test, holding that it allows the court to "look to the contours of the underlying scheme itself rather than the mere elements of the offense charged." *Id.* at 1298 (internal quotations omitted).

As a preliminary matter, the Application Notes to the Sentencing Guidelines set forth an important limitation on downward adjustments:

> If a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct, a reduction for a mitigating role under this section ordinarily is not warranted because such defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense. For example, if a defendant whose actual conduct involved a minimal role in the distribution of 25 grams of cocaine (an offense having a Chapter Two level of 14 under § 2D1.1) is convicted of simple possession of cocaine (an offense having a Chapter Two offense level of 6 under § 2D2.1), no reduction for a mitigating role is warranted because the defendant is not substantially less culpable than a defendant whose only conduct involved the simple possession of cocaine.

U.S.S.G. § 3B1.2 comment (n.4). This limitation is designed to prevent the defen-

dant from receiving a downward adjustment as a result of playing a minor role in a more serious offense with which he could have been, but was not, charged. In *United States v. Olibrices*, 979 F.2d 1557, 1559–61 (D.C.Cir.1992), the Court relied on Application Note 4 in finding that a courier who was part of a larger drug operation was not entitled to a downward adjustment for "minor participation" because the defendant's role in the larger drug conspiracy did not constitute part of her base offense level. The defendant argued that the sentencing judge had erred in not taking into account her minor role in the larger conspiracy in which she could have been, but was not charged.[2] Unlike *Olibrices*, Mr. Akintomide seeks a downward adjustment for playing a minor role in the offense with which he was, in fact, charged. Thus, the limitation on downward adjustment set forth in Application Note 4 does not apply to the case at bar.

Turning to the merits of Mr. Akintomide's claims, and employing a totality-of-the-circumstances test, the court observes that the facts of this case closely resemble those of another case in this Circuit. In *United States v. Soto*, the D.C. Circuit determined that the defendant (1) was recruited as a courier for a single smuggling transaction; (2) lacked knowledge or understanding of the scope and structure of the enterprise itself as well as of the activities of the other participants; (3) knew nothing about what she would be paid; and (4) perhaps knew nothing about the quantity of the contraband she was transporting. *See Soto*, 132 F.3d 56, 59

(D.C.Cir.1997). As a result, the Court stated that "we cannot imagine a defendant better suited for serious consideration under Section 3B1.2 or more squarely prejudiced by [her] counsel's failure to raise it."

Like the defendant in *Soto*, Mr. Akintomide is "precisely the sort of person the minimal/minor participation provision covers." *See id.* Mr. Akintomide was approached by a drug dealer to act as a courier in a single smuggling transaction. The defendant perhaps knew nothing about the quantity of contraband he was transporting. In addition, like the recruiter in *Soto*, Mr. Akintomide's recruiter bought him the bus tickets and took him to the bus station. He told Mr. Akintomide to pick up the bag containing the contraband from a person he had never met in Cleveland and to deliver it to another person whom he did not know in Washington, D.C. The record strongly suggests that the defendant did not possess significant knowledge or understanding of the scope and structure of the enterprise, or of the activities of the other parties involved in planning and executing the drug-smuggling operation.[3]

Although the government cites *Soto* in a footnote, it makes no serious effort to distinguish *Soto* from the instant case. This is surprising given that *Soto*, unlike most of the cases on which the government relies, was based on an ineffective-assistance-of-counsel claim relating to the failure to seek a downward adjustment under

**2.** The government initially sought to charge the defendant for participation in a larger drug conspiracy, in violation of 21 U.S.C. § 846, but agreed to dismiss this count in return for the defendant's guilty plea. *See Olibrices*, 979 F.2d at 1557.

**3.** Similarly, Mr. Akintomide resembles the defendant in *Caballero*, in that he was the only

defendant involved in the "elements and acts cited in the count of the conviction," and like *Caballero*, he was not the only participant in the drug transaction. *See id.* (citing U.S.S.G., Appendix C, part 345); Tr. III at 69; PSR at 7. In fact, there were at least two, and possibly three, other participants in the transfer of heroin from Cleveland to Washington, D.C.

section 3B1.2 the same argument that the defendant makes before this court. Instead, the government cites and discusses at length the concurring opinion in an Eleventh Circuit case, *United States v. Rodriguez De Varon*, 175 F.3d 930 (11th Cir.) (*en banc*), *cert. denied*, 528 U.S. 976, 120 S.Ct. 424, 145 L.Ed.2d 331 (1999). The government argues that *Rodriguez De Varon* stands for the proposition that a drug courier whose actual conduct is identical to his relevant conduct must be found to play an essential role in the offense. *See* Gov. Mem. at 11–12. This supposition is contrary to the D.C. Circuit's focus on the relative culpability of the participants in the offense, rather than the contribution of relative conduct to the defendant's base offense level. *See Caballero*, 936 F.2d at 1298–99. Indeed, as the defendant points out, the government's position would unfairly penalize the drug courier whose offense level is not increased by relevant conduct, because couriers are often deliberately insulated from the other participants in the scheme and, therefore, do not have relevant conduct added to their base offense levels.

 In sum, the court concludes that the defendant meets the criteria for a downward adjustment under U.S.S.G. § 3B1.2. There is, therefore, a reasonable probability that, but for defense counsel's "unprofessional" errors, the result of the sentencing would have been different. Nevertheless, the amount of drugs that the defendant transported prevents him from obtaining a downward adjustment as

a minimal participant. According to Application Note 2, a downward adjustment under 3B1.2 "would be appropriate, for example, for someone, who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, *or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.*" U.S.S.G. § 3B1.2 (note 2) (emphasis added). In *United States v. Webster*, the Ninth Circuit reasoned that although a finding that the defendant carried a substantial amount of drugs would foreclose a "minimal participant" downward adjustment, such a finding would not preclude a "minor participant" downward adjustment.[4] *See Webster*, 996 F.2d 209, 212 n. 5 (9th Cir.1993). In light of the court's reasoning in *Webster*, the court determines that there is a reasonable probability that the defendant would have received a downward adjustment as a *minor*, but not a minimal, participant.

## V. CONCLUSION

For the foregoing reasons, the court will grant the defendant's motion for reconsideration of sentence. An order setting a re-sentencing and directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this ____ day of April 2001.

4. The court agrees with the defendant that if the Sentencing Commission had intended for drug quantity to be a significant factor in determining whether the courier is entitled to a mitigating role adjustment, *see* Gov. Mem. at 12–14, it would have so stated in clear language. The government's reliance on drug quantity as a significant factor in the mitigating-role determination would undermine the Commission's instruction that a defendant's

role in the offense must be determined by the totality of the circumstances and that no particular factor is sufficient to grant or deny a role adjustment. *See* U.S.S.G. Ch. 3, Pt. B., intro. comment. Drug quantity is relevant, however, to the minimal-minor participation distinction, because the commentary to section 3B1.2 indicates that the four-point minimal role adjustment "will be used infrequently." *See* U.S.S.G. § 3B1.2 comment. (n. 2).