**UNITED STATES of America**

v.

**Mark A. MARAGH.**

**Crim. No. 88–0322–LFO.**

United States District Court, District of Columbia.

Sept. 26, 1988.

Theodore A. Shmanda, Asst. U.S. Atty., Washington, D.C., for U.S.

James E. McCollum, Jr., College Park, Md., for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

Defendant Mark A. Maragh, a twenty year old black male, disembarked at Union Station in the company of two other young black males from an Amtrak train that originated in New York City. He was carrying a small bag by a strap on his shoulder. A five-man squad of police detailed to interdict drug couriers at Union Station observed the three and deployed. One of the squad, Detective Vance L. Beard, observed two of the three separate from defendant and go to a phone; one of the two talked on the phone while the other observed. They rejoined defendant for a brief conversation. Defendant again separated himself from the two. In so doing he established eye contact with Detective Beard. Then defendant and the other two separately started walking toward the exit.

On the basis of the foregoing observations by Beard, the squad deployed. Detective Beard approached defendant. Detective Hanson positioned himself as a backup. Detective Cassidy, a distinctively tall, slender gentleman, left the immediate area to position himself at the exit, in Detective Beard's words, "in case anybody ran." Beard approached defendant from his left rear. According to Beard, he stopped at an oblique angle to defendant (so that defendant could continue walking if he chose to do so.) Beard then identified himself as a police officer, showed his badge and asked defendant if he would answer some questions. While Detective Hanson stood a few feet to defendant's rear and Detective Cassidy was positioned (presumably out of sight by defendant) to bar escape, a colloquy ensued between Detective Beard and defendant. There is no evidence as to Detective Beards' manner of speech when he identified himself. He is a distinguished-looking gentleman with a commanding appearance. Detective Beard asked where defendant was coming from (New York), asked to see the ticket (defendant produced it), and learned that defendant had lived in Washington for four months, went to New York the preceding Friday and was just returning (it was Tuesday).

Informed only by this colloquy and the observations preceeding his introduction of himself to defendant, Detective Beard then identified himself as an officer from the Narcotics Branch and explained that his purpose was to intercept drugs before they had a chance to reach the streets of Washington. Beard asked defendant if he was carrying drugs in what Beard describes as his "tote bag." Defendant responded in the negative. Beard then asked if he could look into the bag. Defendant acquiesced, placed the bag on the floor and started to open the zipper. Detective Beard stooped over (so that all he could see of defendant was his feet), took the bag, finished opening the zipper, felt inside, pulled out some pants (possibly swimming trunks), and felt a rock-like substance in a pocket which he suspected to be drugs. Detective Beard thereupon signalled by voice code to Detective Hanson, and told defendant he was under arrest. Simultaneously, Detective Hanson came up behind defendant, seized his arms and handcuffed him. After this exchange defendant stated that the drugs were not his.

The circumstances here raise two questions: (1) Whether an officer's commencement of a conversation with a person in a public place by identifying himself or herself as a narcotics officer constitutes a "stop" implicating the Fourth Amendment; and (2) If so, what if any level of suspicion must be generated by the circumstances to justify such a stop.

These questions have not apparently been addressed by our Court of Appeals. However, recent decisions by the Courts of Appeals for the Fifth Circuit and the Seventh Circuit commend themselves. The Fifth Circuit has stated

[P]rior to her arrest, [defendant] Gonzales was engaged in mere communication with [officer] Glenn, perfectly permissible under the fourth amendment. However, at the time Glenn informed Gonzales that he was "working narcotics" and requested to look in her bag, a reasonable person would no longer have felt free to leave.

*U.S. v. Gonzales,* 842 F.2d 748, 752 (5th Cir.1988).

Similarly, the Seventh Circuit has stated when the agents informed defendant he was suspected of trafficking in narcotics and asked to search his belongings, the mere consensual questioning session which did not constitute a seizure turned into an investigative stop. An investigative stop constitutes a seizure and must be supported by an agent's reasonable suspicion defendant is involved in criminal activity.

*United States v. Palen,* 793 F.2d 853, 857 (7th Cir.1986).

 Application of these principles here requires a finding that Detective Beard executed a stop. Beard's questioning of defendant turned into an investigative stop when the Detective identified himself as a member of the Narcotics Branch whose purpose it was to stop drugs from coming into Washington, stood obliquely in front of him, with Detective Hanson behind him and Detective Cassidy "downfield", and asked to search defendant's bag. While there is no testimony as to whether defendant knew of the back up and blocking positions of the other officers, a reasonable person of defendant's years could have sensed the maneuvers and the presences, as well as the *in terrorem* effect of Detective Beard's identification of himself as a narcotics officer *after* defendant had denied possession of drugs.

 Accordingly, it is necessary to evaluate the information related by Detective Beard as the justification for this stop. Contrary to the stated position of the government at argument on the motion, some minimal criteria must be met to justify such a "stop." In *Gonzales,* the court ruled that the officers had established the reasonable suspicion necessary to justify detention of Gonzales: he arrived from a "source city", appeared nervous and watchful, did not produce any identification when requested to do so, and deliberately attempted to mislead the officers as to the length of her stay. In *Palen,* the court ruled that the agents had a reasonable suspicion defendant could be involved in

criminal activity at the time the consensual questioning turned into an investigative stop, justifying a seizure: Palen arrived from a "source city", was walking at an abnormal pace, had an airline ticket in an assumed name, and gave the officer false information about where he had purchased the ticket. Here, by contrast, apart from defendant's presence in Union Station en route from New York in the company of two of his peers, Detective Beard articulated nothing to distinguish defendant and his companions from any three young black men passing through Union Station from a train from New York, and stopping to telephone someone before leaving the station. The bare fact that defendant had eye contact with a detective in plain clothes and then rejoined his companions, talked with them and started walking out of the station does not justify the stop which ensued here. With great respect for the experience and expertise of Detective Beard and his colleagues, what he related here as the basis for his action is not the required "quantum of individualized suspicions" required by Supreme Court precedent." *United States v. Gonzales,* 842 F.2d at 753.

Since the stop was not justified by articulable suspicion, a question could remain as to whether, even though the stop was unlawful, the subsequent search was voluntary because defendant was free to refuse to agree to permit the search of his bag, and was indeed free to leave. See *Gomez v. Turner,* 672 F.2d 134, 141 (D.C.Cir.1982). The short answer is that the same threatening environment that converted the conversations into a "stop" vitiates any claim that a reasonable person in the circumstances of defendant would feel free to refuse the request to search his bag or feel free to leave. Accordingly, an accompanying order will grant the motion to suppress introduction into evidence of the 58 grams of cocaine that were taken from the pants found by Detective Beard in defendant's tote bag and defendant's statement to the effect that the cocaine was not his.

### ORDER

For the reasons stated in the accompanying Memorandum, it is this 26th day of September, 1988 hereby

ORDERED: that defendant's motion to suppress the evidence seized from him and the statement made after it was seized should be, and is hereby, GRANTED.