**UNITED STATES of America, Appellee,**

**v.**

**Jose Antonio CABALLERO, Appellant.**

**UNITED STATES of America, Appellant,**

**v.**

**Jose Antonio CABALLERO, Appellee.**

**Nos. 90–3129, 90–3156.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 1, 1991.

Decided June 21, 1991.

Appeals from the United States District Court for the District of Columbia (Criminal No. 89–00496–01).

Paul T. Cappuccio (appointed by the Court), with whom Richard A. Cordray, was on the brief, for appellant in 90–3129 and appellee in 90–3156.

Philip S. Kushner, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Thomas C. Black and John M. Seabright, Asst. U.S. Attys., were on the brief, for appellee in 90–3129 and appellant in 90–3156. Helen M. Bollwerk, Asst. U.S. Atty., also entered an appearance for the U.S.

Before SILBERMAN, BUCKLEY and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

HENDERSON, Circuit Judge:

Jose Antonio Caballero was convicted of possession with intent to distribute over fifty grams of cocaine base in violation of 21 U.S.C. § 841(a). In sentencing Caballero, the trial court determined that he was a "minor" participant in the crime within the meaning of the United States Sentencing Guidelines (Guidelines) and imposed the most lenient available sentence—121 months in prison. Caballero appeals his conviction on fourth amendment grounds. The Government cross-appeals, arguing that the trial court misinterpreted the Guidelines and improperly reduced Caballero's sentence. We affirm Caballero's conviction but remand for resentencing.

## I.

On the night of November 29, 1989, a drug interdiction task force was stationed at the Greyhound bus terminal in Washington, D.C. The task force, composed of District of Columbia police officers, had the job of stopping travellers from narcotics "source" cities and questioning them about their activities. At approximately ten o'clock that night, Caballero arrived at the station from New York, a source city, and was stopped by one of the task force members, Officer Brennan.

Brennan was dressed in casual clothes and carried a concealed weapon. When Caballero reached the sidewalk outside the bus terminal, Brennan approached Caballero, identified himself as a police officer and asked if Caballero would answer some questions. Caballero did not object. Brennan then asked to see Caballero's bus ticket and Caballero complied. The ticket confirmed that Caballero had arrived from New York City. After asking where Caballero was staying in Washington and learning that he was staying with an aunt, Brennan asked him if he was carrying narcotics. Caballero said that he was not.

In response to Caballero's negative answer, Brennan asked if he could search Caballero's bag. According to Brennan, Caballero said "yes" and handed him the bag.[1] Inside the bag, Brennan noticed a box of Cheese Nips. That box, unlike other boxes the officer had seen, seemed filled to the top and inflexible. Brennan asked if he could open it and Caballero again consented. Brennan found hidden among the crackers a package containing white powder, later determined to be cocaine. At that point, Brennan arrested Caballero.

1. At trial Caballero contested these facts and claimed that he never responded affirmatively to Brennan's request. The trial court, however, credited Brennan's testimony and concluded that Caballero had consented.

2. Regarding a downward adjustment, defense counsel stated:
   Now, if I was in a position to ask for a reduction for this defendant's role in the offense, I would do that. The guidelines, unfortunately, preclude me from doing that....

Before trial Caballero moved to suppress the cocaine. Caballero argued both that he was unlawfully "seized" by Brennan and that he had not voluntarily consented to the search of his bag. The trial court heard and denied the motion, concluding:

It is true, as the prosecutor points out, there were no weapons, there was no physical attempt to restrain the defendant, no shouting or anything. The mere fact that he felt that he couldn't go is certainly not enough grounds [for the stop to amount to a seizure]....

Insofar as the search of the bag and the box are [sic] concerned, it's simply a question of credibility. While I am not one who automatically believes the officers—as a matter of fact, I think I disbelieved this particular officer in a couple of fairly recent cases—I think in this case his story seems more credible than that of the defendant.

It appears to me that the defendant, for whatever reason, agreed to have him search the bag. Now, why he did that, I don't know. As I said before, it always baffles me why the people, who are approached, agree to that. Maybe they are somehow subjectively intimidated by a police officer. But the fact is I find that he consented to the search, and therefore the search was legal. The motion to suppress will be denied.

Caballero was then tried for and convicted of possession with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 841(a). Under the Guidelines the base offense level for that crime is 34, with a range of 151 to 188 months' imprisonment. Despite defense counsel's assertions at the sentencing conference that Caballero was not entitled to a downward adjustment of his base offense level,[2]

Your Honor, I believe that there is nothing that indicates that this [is] not anything but an isolated incident. I realize that the court is constrained by the Federal Sentencing Guidelines. The discretion that the court has in sentencing at this point is greatly limited. I would just simply ask that the court use its discretion to impose the lowest possible sentence that it can under the circumstances.

the trial court *sua sponte* raised the issue whether Caballero was a "minor" participant under section 3B1.1 of the Guidelines and concluded that Caballero was entitled to a two-point downward adjustment. At that reduced level, Caballero's imprisonment range was 121 to 151 months and the court sentenced him to 121 months.

In reaching its decision to adjust Caballero's base offense level, the trial court declared:

> I think it is really unfortunate, to say the least, that Congress has seen fit to have these extraordinarily high mandatory minimum sentences for people like this defendant who really are just couriers and do not have major responsibility for the drug plague that plagues this country. But as you also recognize, and as the defendant must recognize by now, I have very little leeway in what I can do. Congress has said he has to get at least ten years.
>
> In a way, if there is any responsibility—and I certainly don't like to shift responsibility—if there is any responsibility here, it lies, in addition to the Congress, with the United States Attorney's office. I don't mean this particular Assistant United States Attorney. But in other districts, I'm told by other federal judges, the United States Attorney's office is taking more a reasonable approaches [sic], and in cases of this kind have not insisted upon charging them with an offense that carries a ten-year mandatory minimum. But I, obviously, can't do anything about that.
>
> The one thing I can do—what I will do—is to reduce the computation slightly by finding that he is a minor participant, which will reduce the offense levels [sic] from 34 to 32. The effect of that will be to reduce the required sentence under the guidelines from 151 to 188 months to 121 to 151 months.

The trial court declined the Assistant United States Attorney's request for an explanation of its decision to grant a two-point reduction.[3]

The parties now cross-appeal. Caballero contends on appeal (i) that the trial court erred when it determined that he had not been "seized" by police before the search; and (ii) that the court used an incorrect legal analysis in denying his motion to suppress. The government contends that the court erred when it reduced Caballero's base offense level and seeks a reversal of the court's finding that Caballero was a minor participant. We reject both of Caballero's contentions but remand so that the trial court can re-examine whether Caballero was a minor participant.

## II.

■ Caballero's first contention is that he was "seized" by Brennan as soon as Brennan asked him if he was carrying drugs and for his consent to a search. Caballero relies on decisions from other circuits that have decided that this sequence, as a matter of law, transforms a mere stop into a "seizure" for the purpose of the fourth amendment. *See United States v. Gonzales*, 842 F.2d 748, 752 (5th Cir.1988); *United States v. Palen*, 793 F.2d 853, 857 (7th Cir.1986). Caballero further argues that the seizure violated his fourth amendment rights because there was no reason for Brennan to suspect that he was carrying drugs.

We need not dwell long on this issue. Very recently, this court considered and rejected the seizure argument Caballero makes here. In *United States v. Maragh*, 894 F.2d 415, 416 (D.C.Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 214, 112 L.Ed.2d 174 (1990), an undercover police officer approached the defendant in a train station, identified himself as an officer, asked the defendant if he had any drugs and then asked to search the defendant's shoulder bag. The trial court, relying on the Fifth and Seventh Circuit decisions, concluded that the investigatory stop amounted to a

---

**3.** In responding to the Assistant United States Attorney's request, the court stated:

In the courts in which I have practiced—which is not for quite a while—both as a lawyer and as a judge, it's usually the judge who asks the questions and not the lawyers. You may sit down.

seizure. 695 F.Supp. 1223, 1225 (D.D.C. 1988). In reversing the lower court, we expressly rejected the bright line test used by our two sister circuits and held that the circumstances of the stop were not so intimidating that the defendant could not have reasonably believed that he was not free to leave. 894 F.2d at 418–19.

Moreover, we have repeatedly held that bus or train station stops by undercover police officers, like the one here, do not amount to seizures. *See, e.g., United States v. Nurse,* 916 F.2d 20, 23 (D.C.Cir. 1990); *United States v. Smith,* 901 F.2d 1116, 1117–18 (D.C.Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 172, 112 L.Ed.2d 136 (1990); *United States v. Winston,* 892 F.2d 112 (D.C.Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3277, 111 L.Ed.2d 787 (1990); *United States v. Joseph,* 892 F.2d 118 (D.C.Cir.1989); *United States v. Baskin,* 886 F.2d 383 (D.C.Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1831, 108 L.Ed.2d 960 (1990); *United States v. Lloyd,* 868 F.2d 447 (D.C.Cir.1989). In light of clear precedent, we hold that Caballero's encounter with Brennan did not constitute a seizure under the fourth amendment.

### III.

Caballero next argues that the trial court failed to use the proper legal analysis when it concluded that he consented to the search of his bag. According to Caballero, the court addressed only whether he actually consented to the search and not whether that consent was *voluntary.* This argument rests almost entirely on the fact that the trial judge, in denying the motion to suppress, stated that the issue of consent was "simply a question of credibility."

■ Caballero is correct that the trial court was obligated to state on the record its essential findings of fact to support its conclusion that the search was preceded by valid consent. Fed.R.Crim.P. 12(e). Caballero is also correct that consent must be voluntary to be valid. *See Schneckloth v.*

*Bustamonte,* 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854 (1973); *United States v. Maragh,* 894 F.2d at 420. But our agreement with Caballero ends here. As this court has often repeated, when a trial court omits an essential finding of fact, the failure to object to that omission results in waiver. *United States v. Williams,* 822 F.2d 1174, 1177 n. 39 (D.C. Cir.1987) (failure to object to noncompliance with Fed.R.Crim.P. 12(e) results in waiver and decision will be upheld if any reasonable view of evidence would support it); *United States v. Allen,* 629 F.2d 51, 57 n. 5 (D.C.Cir.1980) (same); *United States v. Lindsay,* 506 F.2d 166, 170 (D.C.Cir.1974) (without explicit findings of fact, trial court's decision will be upheld if any reasonable view of evidence would support it); *Scarbeck v. United States,* 317 F.2d 546, 562 (D.C.Cir.1962) (because trial court failed to make explicit findings of fact and law, its decision that confession was "voluntary" would be upheld if any reasonable view of evidence would support decision). Because Caballero did not object to the trial court's failure to make an express finding of voluntariness, he has waived that argument.

Even assuming Caballero sufficiently made the argument below notwithstanding his failure to argue it at the suppression hearing and his failure to object to the court's consent ruling on that ground,[4] we conclude that the trial court addressed the voluntariness factor and decided it against Caballero.

■ To determine whether the consent was voluntary, we view the " 'totality of all the surrounding circumstances' " and, in particular, consider "the accused's age, poor education or low intelligence, lack of advice concerning constitutional rights, the length of any detention before consent was given, the repeated and prolonged nature of the question, and the use of physical punishment." *United States v. Lloyd,* 868 F.2d at 451 (quoting *Schneckloth v. Busta-*

---

**4.** Caballero did raise a separate voluntariness issue in his memorandum in support of his

motion to suppress. Joint Appendix 9–10.

*monte*, 412 U.S. at 226, 93 S.Ct. at 2047). Caballero argues that "because the district court did not expressly find that his consent was voluntary and did not discuss the factors listed in *Schneckloth*," it committed reversible error. While it is true that the trial court did not use the word "voluntary" or tick off the *Schneckloth* factors, it is nonetheless clear that the trial court did address the circumstances of the consent and concluded, by necessary implication if not expressly, that the consent was voluntarily granted.

■ First, in arguing both the consent and seizure issues, the government specifically relied on many of the same factors to establish that no coercion was used. There is in fact a recognized overlap between the two issues. *See United States v. Maragh*, 894 F.2d at 420. Because the trial court expressly determined no coercion was used to detain Caballero, it necessarily reached the same conclusion regarding those factors as they relate to the voluntariness *vel non* of his consent to search in deciding against him on the latter issue. As we noted earlier, the officer who approached Caballero was wearing plain clothes and carried a concealed gun. He asked permission to stop and question Caballero and spoke in a calm and courteous manner. The officer specifically asked permission to search Caballero's bag before searching it and then asked permission again to search the box of Cheese Nips. Little of the evidence now relied on by Caballero to support his claimed state of mind would indicate that he did not voluntarily consent to the search. At the time of his arrest, Caballero was twenty-one years old and had a tenth grade education. Caballero empha-

sizes the fact that he did not feel free to leave and that he did not know that he could withhold his consent because the officers never told him that he could do so. These facts, by themselves, however, are not enough to manifest that the consent was involuntary. *See, e.g., Schneckloth v. Bustamonte*, 412 U.S. at 247–49, 93 S.Ct. at 2058–59; *United States v. Lloyd*, 868 F.2d at 451–52.

Equally unavailing is Caballero's argument that the trial court found that he had been "possibly subjectively intimidated," thereby tainting his consent. In fact the trial court did not find that Caballero had been subjectively intimidated but instead ruminated about "the people" who are approached by police and consent to a search. The court first speculated: "[m]aybe *they are* somehow subjectively intimidated by a police officer" (emphasis added). The trial judge then repeated his conclusion that, at least in Caballero's case, "the fact [was] ... that he consented to the search."

Finally, Caballero's reliance on *Maragh* is misplaced.[5] He argues that under *Maragh*, reversal and remand is required because, inasmuch as the trial judge's finding of consent did not expressly address the requisite element of voluntariness, it was based on faulty legal premises. The first faulty legal premise, according to Caballero, is the trial court's statement regarding credibility which, Caballero asserts, manifests that it neither evaluated nor found voluntariness. The second alleged legal error is the trial court's failure to make a separate finding of voluntariness. Neither one of these alleged errors, however, is similar to those identified in *Maragh*. Instead, this case fits neatly into the except-

**5.** *Maragh's* holding that the trial court's finding of involuntariness relied on "incorrect legal premises," 894 F.2d at 416, has two bases. First the court concluded that the trial court had given decisive weight to its initial "mistaken conclusion that the officers unlawfully seized Maragh." *Id.* at 420. Second the court concluded that the trial court had apparently treated the tests for seizure and voluntary consent as identical. They are not identical and their dissimilarity required the court to remand (rather than simply reverse) on the involuntary consent finding even though it had already concluded that Maragh had not been "seized" because a reason-

able person in Maragh's position would have felt free to leave. In other words, while the court was able to conclude that the trial court was wrong as a matter of law on the seizure issue, it could not conclude on the record before it that the trial court's finding of involuntariness was clearly erroneous. In reversing and remanding, it relied on language in *Pullman-Standard v. Swint*, 456 U.S. 273, 292, 102 S.Ct. 1781, 1792, 72 L.Ed.2d 66 (1982), that "where findings are infirm because of an erroneous view of the law, a remand is the proper course *unless the record permits only one resolution of the factual issue*" (emphasis added).

ing language of *Pullman–Standard.* The record "permits only one resolution of the factual issue": Caballero's consent was voluntary.

Viewing the totality of the circumstances surrounding the stop, we conclude that the trial court correctly decided the consent issue. In a recent decision with facts strikingly similar to these, we ruled that they are insufficient, as a matter of law, to show involuntary consent. *See United States v. Winston,* 892 F.2d 112 (D.C.Cir. 1989). Accordingly, we affirm the trial court's conclusion that consent was validly given.

## IV.

■ The government argues that we should reverse the trial court's decision to reduce Caballero's offense level pursuant to section 3B1.2(b) of the Guidelines.[6] That section, says the government, allows a downward adjustment only in those circumstances where the defendant was a minor participant in the *specific offense charged* (here, possession of narcotics with intent to distribute). Because Caballero was convicted of a crime that did not involve any other participant, the government would have us conclude that as a matter of law Caballero could not have been a "minor" participant in that crime.

The government places great reliance on *United States v. Williams,* 891 F.2d 921 (D.C.Cir.1989). There we held that a section 3B1.1 adjustment can "only be considered when the defendant has a role in the offense for which 'relative responsibility' can be allocated." *Id.* at 926 (citing § 3B1.1 Backg'd). In so concluding, we reasoned that section 3B1.1 does not allow the sentencing judge to look to "relevant conduct" as defined by section 1B1.3(a). *Id.* at 925. Since *Williams* was decided,

however, the United States Sentencing Commission has added a "clarifying amendment" to Ch. 3, Part B that runs counter to our holding in *Williams. See* United States Sentencing Commission, *Guidelines Manual,* Appendix C, part 345 (effective November 1, 1990). In pertinent part, the amendment explains that "[t]he determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of section 1B1.3 (Relevant Conduct) ... *and not solely on the basis of elements and acts cited in the count of the conviction*" (emphasis added). In light of this clarification, we must reassess *Williams* and reinterpret section 3B1 so that our interpretation comports with the language of the Guidelines.[7]

Like the several courts that have addressed this issue since the clarifying amendment, we conclude that section 3B1 allows the sentencing judge to look to " 'the contours of the underlying scheme itself' rather than the mere elements of 'the offense charged.' " *United States v. Rodriguez,* 925 F.2d 107, 111 (5th Cir.1991) (quoting *United States v. Mir,* 919 F.2d 940, 945 (5th Cir.1990)). *See United States v. Fells,* 920 F.2d 1179, 1185 (4th Cir.1990) ("we reject the argument that ... a court is bound by the narrow scope of the offense for which the defendant was convicted"); *United States v. Bierley,* 922 F.2d 1061, 1065 (3d Cir.1990) ("the fact that there is only one 'defendant' does not necessarily mean that there was only one 'participant' " for purposes of 3B1); *see also United States v. Gordon,* 895 F.2d 932, 935 (4th Cir.) (Wilkins, J.) (pre-amendment decision written by Sentencing Commission chairman, holding that mitigating adjustment is appropriate if there has been group conduct, even if group did not participate in specific crime of conviction), *cert. denied,*

---

6. Section 3B1.2 provides:
   Based on the defendant's role in the offense, decrease the offense level as follows:
   (a) If the defendant was a minimal participant in any activity, decrease by 4 levels.
   (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
   In cases falling between (a) and (b), decrease by 3 levels.

7. In *Williams* we specifically addressed the question whether the sentencing judge can look beyond the elements of the crime of conviction for the purpose of section 3B1.1 (Aggravating Role). Although a different section, section 3B1.2 (Mitigating Role), is involved here, the reasoning in *Williams* is equally applicable. *See Williams,* 891 F.2d at 925–26.

— U.S. ——, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990). Of particular interest are the Fifth Circuit decisions in *Rodriguez* and *Mir.* Before the amendment, that circuit, following our *Williams* decision, held that section 3B1 does not allow consideration of "relevant conduct" as defined by section 1B1.1. *See United States v. Barbontin,* 907 F.2d 1494 (5th Cir.1990); *United States v. Mourning,* 914 F.2d 699 (5th Cir.1990); *United States v. Alfaro,* 919 F.2d 962 (5th Cir.1990). In response to the amendment, however, the Fifth Circuit reversed direction in *Mir,* 919 F.2d at 944–46, and then, in *Rodriguez,* 925 F.2d at 110–11, explicitly rejected its earlier interpretation. Because our reasoning in *Williams*—like that in the earlier Fifth Circuit cases—was nullified by the clarifying amendment, we too must adjust our interpretation of section 3B1.[8]

■ Viewing section 3B1.2 anew, we see no barrier to a trial court's conclusion that a defendant convicted of this offense can be a "minor" participant. Before it may find that a defendant was a minor participant in the offense, however, the evidence available to the court at sentencing must, at a minimum, show (i) that the "relevant conduct" for which the defendant would, within the meaning of section 1B1.3(a)(1), be otherwise accountable involved more than one participant (as defined in section 3B1.1, comment. (n.1)) and (ii) that the defendant's culpability for such conduct was relatively minor compared to that of the other participant(s). The application of section 3B1.2 is inherently fact-bound and largely committed to the discretion of the trial judge.

■ Here the trial court appears to have based its downward adjustment solely on the basis of Caballero's courier status. We disagree that Caballero's status as a courier, by itself, is enough to support a finding that he was a "minor" participant. Notwithstanding the fact that the Guidelines use as an example of a "minimal" partici-

pant (a level of participation less culpable than "minor") someone "recruited as a courier for a single smuggling transaction involving a small amount of drugs," § 3B1.2, comment. (n.2), a courier can play as active and culpable a part in a drug offense as another participant, whether or not that participant is another courier. In reaching this conclusion, we fall in line with all of the circuits that have addressed this issue. *See United States v. Paz Uribe,* 891 F.2d 396, 399 (1st Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2216, 109 L.Ed.2d 542 (1990); *United States v. Garcia,* 920 F.2d 153 (2d Cir.1990); *United States v. Headley,* 923 F.2d 1079 (3d Cir. 1991); *United States v. White,* 875 F.2d 427, 434 (4th Cir.1989); *United States v. Buenrostro,* 868 F.2d 135, 138 (5th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990); *United States v. Ellis,* 890 F.2d 1040, 1041 (8th Cir.1989); *United States v. Zweber,* 913 F.2d 705 (9th Cir.1990); *United States v. Maldonado–Campos,* 920 F.2d 714, 717 (10th Cir.1990); *United States v. Smith,* 918 F.2d 1551, 1556 (11th Cir.1990).

■ Although we conclude that Caballero could be considered a "minor" participant, we remand the case to the trial court for resentencing because it appears that it did not apply the proper legal standard. In determining that Caballero was a minor participant, the court reasoned:

I think it is really unfortunate, to say the least, that Congress has seen fit to have these extraordinarily high mandatory minimum sentences for people like this defendant who really are just couriers and do not have major responsibility for the drug plague that plagues this country.

This statement manifests that the court adjusted Caballero's sentence solely because of his status as a courier. Because this basis is by itself inadequate to support a downward adjustment under section

---

8. As the Fifth Circuit noted in *Mir,* the clarifying amendment to section 3B1 "was not intended to change the law." 919 F.2d at 945 (citing 55 Fed.Reg. 19,202 (1990)). Consequently, that amendment can be applied to Caballero's sen-

tence even though it was imposed before November 1, 1990. *See id.; cf. United States v. Havener,* 905 F.2d 3, 4–5 (1st Cir.1990) (Breyer, J.) (substantive amendments cannot be applied retroactively).

3B1.2, we are compelled to remand the sentencing portion of this case for clarification and application of the correct legal standard.

*See United States v. Lam Kwong–Wah,* 924 F.2d 298 (D.C.Cir.1991) (remand is appropriate when trial court makes error of law in application of sentencing guidelines).[9]

*It is so ordered.*

**9.** We note that remand rather than reversal is appropriate because we cannot say that the evidence before the trial judge was insufficient as a matter of law to support a section 3B1.2 downward adjustment. *Cf. United States v. Maragh,* 894 F.2d at 420.