UNITED STATES of America

v.

Ramon ALBERTO–GENAO.

No. CR. 95–0211(PLF).

United States District Court,
District of Columbia.

Nov. 17, 1998.

Henry Kopel, Assistant U.S. Attorney, Washington, DC, for U.S.

Joanne R. Hepworth, Washington, DC, for Defendant.

## OPINION

FRIEDMAN, District Judge.

This matter is before the Court for sentencing. As a result of various motions and pleadings filed by counsel for the defendant, letters submitted directly to the Court by the defendant and arguments and representations made in open court by counsel for the parties (and by the defendant personally), there are now three issues before the Court that must be resolved before sentence is imposed: (1) whether the defendant was a "minor participant" in the transportation of the almost 20 kilograms of cocaine for which he was convicted, as that phrase was intended and has been interpreted under Section 3B1.2 of the United States Sentencing Guidelines; (2) whether the defendant is eligible for consideration under the so-called "safety valve" provision of the Guidelines, Section 5C1.2; and (3) whether the defendant has "demonstrated acceptance of responsibility," qualifying him for a two or (possibly) three point reduction in his offense level under Section 3E1.1 of the Guidelines.

## I. BACKGROUND

The defendant, Ramon Alberto Genao, was arrested on July 19, 1995 when police searched luggage in a train compartment occupied by Mr. Genao and his two companions, Felipe Soto and Janice Rosado, and found nearly 20 kilograms of cocaine. Mr. Genao, Mr. Soto and Ms. Rosado were charged with possession with intent to distribute cocaine. After their trial, Mr. Soto and Ms. Rosado were both acquitted by a jury. At Mr. Genao's first trial, which was separate from that of Mr. Soto and Ms. Rosado, the jury deadlocked and the Court declared a mistrial. Both Mr. Soto and Ms. Rosado testified at that trial. The govern-ment elected to try Mr. Genao again but did not call Mr. Soto or Ms. Rosado as witnesses at the second trial.

After hearing the evidence concerning Mr. Genao's trip by train with Mr. Soto and Ms. Rosado from Miami *en route* to New York with nearly 20 kilograms of cocaine, the jury convicted him of possession with intent to distribute cocaine. At both trials, Mr. Genao's primary defense was that the drugs were not his and that he didn't know anything about them. He testified at his first but not at his second trial. At all three trials, the jury heard evidence that Mr. Genao made statements to the police both on the train and at the police station to the effect that neither Mr. Soto nor Ms. Rosado was involved in the transportation of the cocaine and that the drugs belonged to him.

## II. DISCUSSION

### A. The Sentencing Guidelines

Under the Sentencing Guidelines, the guideline sentence in a narcotics case is determined primarily by the amount of drugs involved. In this case, the evidence at trial was that the defendant transported nearly 20 kilograms of powder cocaine from Miami *en route* to New York with the intent to distribute it. Under Section 2D1.1(c) of the Guidelines, the base offense level for possession of powder cocaine with intent to distribute is Level 34 if the amount of powder cocaine involved is more than 15 but less than 50 grams, as it was here. *See* U.S.S.G. § 2D1.1(c)(3). The Probation Officer, in preparing the Presentence Investigation Report, concluded that no upward or downward adjustments were appropriate for the defendant's role in the offense under Chapter Three, Part B, of the Sentencing Guidelines. He also concluded that no downward adjustment for acceptance of responsibility was appropriate under Section 3E1.1 because the defendant denied his guilt at trial, in a personal interview with the Probation Office and in a letter he wrote to the Probation Officer. The defendant, who is 33 years old, has no prior convictions. As a result, he has a criminal history score of zero which puts him in Criminal History Category I. With a total

offense level of 34 and a Criminal History Category of I, the guideline sentencing range is 151 to 188 months. Before imposing sentence, therefore, the Court must consider the three matters raised by the defendant or his counsel.[1]

### B. Minor Participant

■ Under Section 3B1.2 of the Sentencing Guidelines, a court may decrease the offense level by two levels if it finds that the defendant was "a minor participant" in the criminal activity. A minor participant is defined as "any participant who is less culpable than most other defendants but whose role could not be described as minimal." *See* U.S.S.G. § 3B1.2, Application Note 3.[2] The defendant argues that he was a minor participant (if he was a participant at all) in the transportation of almost 20 kilograms of cocaine because he was less culpable than others. While he first argues that he was less culpable than Mr. Soto, his primary argument in this regard is that he was at most only a courier bringing drugs from Miami to New York at the behest of another or others who were not defendants in any of the trials before this Court and that he was a minor participant compared to those others.

Even assuming that Mr. Genao was a courier for another, this is not enough to make him a "minor participant" in the criminal activity with which he was charged. Our court of appeals has already ruled that a defendant's status as a courier, by itself, is not enough to support a finding that he was a "minor participant." *See United States v. Caballero*, 936 F.2d 1292, 1299 (D.C.Cir. 1991), *cert. denied*, 502 U.S. 1061, 112 S.Ct. 943, 117 L.Ed.2d 113 (1992). The Guidelines use as an example of a "minimal participant" a person who "played *no other role* in a very large drug smuggling operation than to offload part of *a single marihuana shipment*, or in a case where an individual was recruited as a courier for *a single smuggling transaction* involving a *small amount* of drugs."

U.S.S.G. § 3B1.2, Application Note 2 (emphasis added). As the court of appeals pointed out in its consideration of the "minor participant" definition, however, "a courier can play as active and culpable a part in a drug offense as another participant, whether or not that participant is another courier." *United States v. Caballero*, 936 F.2d at 1299. The "application of Section 3B1.2 is inherently fact-bound and is largely committed to the discretion of the trial judge." *Id.*

In this case, the evidence at trial was that Mr. Genao was the leader among the three individuals who made the trip from Miami to New York, and he volunteered to the police on several occasions that this was his deal and that he bore responsibility for this large, nearly 20–kilogram drug shipment. He also told an interviewing detective that he was not even supposed to be on the train coming back from Miami with Mr. Soto and Ms. Rosado but was supposed to have flown back by himself, the kind of arrangement that an organizer or leader of a drug deal would likely make in order to avoid being personally in possession of the drugs if there were an arrest. Furthermore, all of the luggage in which the cocaine was found was Mr. Genao's, not Mr. Soto's, Mr. Genao had the key to those pieces of luggage that were locked, and the luggage was on his and Ms. Rosado's side of the train compartment, not Mr. Soto's. The evidence at trial clearly portrayed Mr. Genao as having far greater culpability than either Mr. Soto or Ms. Rosado.

■ As for the probability that there was a "drug kingpin" and intermediate distributors somewhere who engaged Mr. Genao to pick up the drugs in Miami and arrange for their transportation to New York, it is not appropriate under *Caballero*, the Guidelines or the application notes, to contrast the assumed conduct of an unknown "kingpin" with the courier then on trial. Under *Caballero*, courier status alone is not enough, and trial courts are to analyze the facts and circum-

---

**1.** If the Court were persuaded on each of the defendant's three arguments, he would receive a six-level reduction and would thus be at offense level 28 and Criminal History Category I, making the guideline sentencing range 78 to 97 months.

**2.** If a defendant was a "minimal participant," the offense level is reduced by four levels; if he was a "minor participant," it is reduced by two levels. U.S.S.G. § 3B1.2. Each is a term of art under the Sentencing Guidelines and the distinctions are significant.

stances of a defendant's conduct to determine his role in the offense charged. It would trivialize and pervert the minor participant Guideline to disregard what the jury reasonably found to be the defendant's significant and knowing and willful role in the acquisition and transportation of this large amount of cocaine with a street value of approximately five million dollars. So far as all the evidence shows, Mr. Genao simply was not the low person on the totem pole; he is a far cry from the one time courier in a single transaction involving a small amount of drugs. *See United States v. Caballero,* 936 F.2d at 1297–1300.

### C. Safety Valve

At the sentencing hearing on July 29, 1998, the Court on its own raised the question of whether Mr. Genao was eligible for safety valve consideration under Section 5C1.2 of the Sentencing Guidelines, a matter that he and his counsel had not presented in their sentencing memorandum. If Mr. Genao were eligible for the safety valve, the Court could depart downward two levels from Offense Level 34 to Offense Level 32 (121–151 months instead of 151–188 months). *See* U.S.S.G. §§ 2D1.1(b)(6) and 5C1.2.[3] Despite the large quantity of narcotics involved in this case, the defendant has zero criminal history points, he did not use violence or the threat of violence or possess a firearm or weapon in connection with this offense, and the offense did not result in death or serious bodily injury to anyone. Thus, the defendant clearly meets the first three criteria for safety valve eligibility. *See* U.S.S.G. § 5C1.2(1)-(3).

With respect to the fourth criterion, the government did not argue to the Probation Office at the time the Presentence Investigation Report was prepared that the defendant was an organizer, leader or supervisor of others involved in the offense. U .S.S.G. § 5C1.2(4). It now suggests, however, that there is a legitimate argument to be made that Mr. Genao was the ringleader of the three people who were arrested and indicted.

July 29, 1998 Transcript at 11–12. *See also* Govt's Supplemental Submission of Newly Learned Facts (Aug. 25, 1998) at 3–5. The Court thinks it prudent at this stage, however, not to decide that issue or consider the new facts proffered by the government but instead to resolve the safety valve issue on what is the most serious sticking point with respect to Mr. Genao's safety valve eligibility in this case.

The fifth criterion for safety valve eligibility requires that the defendant "not later than the time of the sentencing hearing, ... [have] truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, ..." U.S.S.G. § 5C1.2(5). There is no question that prior to July 29, 1998 the defendant had not provided any information to the government other than the statements at the time of his arrest that the drugs were all his and that his companions were not involved and his testimony at one of his trials denying responsibility for the drugs. At the behest of the Court, however, the prosecution and the detective responsible for this investigation debriefed Mr. Genao on July 29, 1998 in the presence of his counsel.

At the conclusion of the nearly 2–1/2 hour debriefing, counsel for the defendant represented that Mr. Genao had truthfully provided all of the information that he had about the offense.

In light of those representations, his counsel argued that Mr. Genao now has "candidly told all that he knows about the incident" and therefore is eligible for the safety valve. *Id.*

Counsel for the government, having sat through the debriefing as well as the first of the three trials which he prosecuted and portions of the other two trials, discounted the representations made by Mr. Genao at the eleventh hour debriefing. Simply put, in view of all the evidence at all of the trials, Mr. Genao's numerous inculpatory statements to the police on the day of his arrest,

---

**3.** If the statutory mandatory minimum sentence had been greater than the minimum sentence under the Guidelines, the Court also would be

relieved from imposing the statutory minimum. *See* 18 U.S.C. § 3553(f).

the testimony of Mr. Soto and his character witnesses, and the physical evidence produced at the trials, the government was not persuaded that Mr. Genao had been truthful during the debriefing. It therefore could not represent to the Court that the defendant had truthfully provided to the government all information and evidence in his possession with respect to the conduct involved, as required by Section 5C1.2 of the Guidelines. *See* July 29, 1998 Transcript at 26–30.

Based on the representations of counsel about the debriefing and the Court's own knowledge of the testimony and evidence at the three trials over which it presided, the Court was prepared to find that the defendant had not satisfied the fifth criterion by truthfully providing the government with all information and evidence he had. *See* July 29, 1998 Transcript at 41–47. At that point, however, counsel for the defendant suggested that the Court could not make such a finding without hearing the testimony of the defendant himself and without making its own credibility determination as to whether the defendant was truthfully providing information to the government sufficient to satisfy the safety valve provision. The Court adjourned the proceeding and invited supplemental briefs from the parties on this issue.

The Court reconvened for purposes of a further hearing and possible testimony from the defendant on August 27, 1998. In the interim, however, the government had come into possession of information that Mr. Genao—unbeknownst to anyone involved in this case, including Mr. Genao—had been indicted in 1996 with many other defendants in the United States District Court for the Eastern District of North Carolina for conspiracy to distribute cocaine base. In view of the fact that Mr. Genao was now facing additional charges, his counsel advised him not to testify with respect to the debriefing, presumably on the ground that anything he might say could be used against him in the North Carolina prosecution or perhaps on the understanding that he risked the possibility of a perjury charge if he testified. *See* Def.'s Reply to Govt's "Newly Learned Facts" in Opposition to "Safety Valve Adjustment" (Aug. 26, 1998) at 3–4. Counsel represented

that she and the defendant had agreed that he would proceed by way of proffer instead. Counsel then made a detailed proffer as to what the defendant said at the debriefing and why it was sufficient under the Guidelines. *Id.* at 3–5; August 27, 1998 Transcript at 5–6, 12–18. In addition, while he did not testify, the defendant made his own "legal argument" to the Court, not under oath, at the conclusion of the hearing. *See* August 27, 1998 Transcript at 34–40. Among other things, he explained in general terms his relationship to the drug deal and to Mr. Soto and Ms. Rosado. *Id* at 35–37.

■ Before withdrawing her request that the Court hear testimony from the defendant, counsel for the defendant argued vociferously that the Court had an absolute obligation to hear the defendant's testimony and to resolve any questions of the defendant's truthfulness and credibility to its own satisfaction. The government, by contrast, maintained that the decision whether to hear such testimony for purposes of the safety valve determination is entirely discretionary with the trial court. The Court agrees with the government.

The Sentencing Guidelines themselves provide that when any factor "important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor...." U.S.S.G. § 6A1.3(a). Under the Guidelines, "[a]n evidentiary hearing need not be afforded on demand because there is no 'right' to a hearing .... [Section 6A1.3] requires the district court to provide a procedure—but not necessarily an evidentiary hearing—in which the parties may argue contested sentencing issues." *United States v. Cantero,* 995 F.2d 1407, 1413 (7th Cir.1993) (where factual issue was whether defendant was leader or organizer). *Accord United States v. Gerante,* 891 F.2d 364, 367 (1st Cir.1989) (where factual issue was whether defendant's recent version of facts contrasted with his original admissions and physical evidence, as to whether he had only minor involvement in drug dealing). Specifically with respect to the safety valve, the Ninth Circuit has held that "[t]here is no general right to an eviden-

tiary hearing at sentencing, ... and a district court has discretion to determine whether to hold such a hearing.... any such hearing is discretionary, not mandatory." *United States v. Real–Hernandez*, 90 F.3d 356, 362 (9th Cir.1996). All that is required for the safety valve determination is that the district court "provide the parties a 'reasonable opportunity' to present information to the court." *Id.* There is no requirement that a court hear from the defendant directly; rather, it may consider "information learned from other sources" that indicates whether or not the defendant has been forthcoming. *United States v. Ajugwo*, 82 F.3d 925, 929 (9th Cir. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997).

By the time of sentencing, a court is privy to a great deal of information that might bear on the resolution of a dispute between the government and the defendant concerning the defendant's truthfulness at a safety valve-related debriefing—including all of the testimony at trial, the demeanor of the defendant on other occasions, and the jury's verdict or, in this case, verdicts. *See United States v. Sherpa*, 110 F.3d 656, 660–61 (9th Cir.1996) (*as amended on denial of reh'g and reh'g en banc*); *cf. United States v. DeJesus–Gaul*, 73 F.3d 395 (D.C.Cir.1996). A court necessarily must have the discretion to consider any and all such information bearing on that question and the concomitant discretion to deny a defense request for a full-blown evidentiary hearing. *See* U.S.S.G. § 6A1.3, Commentary ("The sentencing court must determine the appropriate procedure in light of the nature of the dispute, its relevance to the sentencing determination, and applicable case law"); *United States v. Cantero*, 995 F.2d at 1413. In this case, the Court provided the parties numerous opportunities to present information concerning the dispute over the defendant's truthfulness at his eleventh hour debriefing. Accordingly, had the defendant not withdrawn his request to testify, the Court would have exercised its discretion to deny it because the Court already had sufficient information before it to make a judgment.

Whenever the government seeks an upward adjustment or upward departure that might lead to an increase in the sentence under the Sentencing Guidelines, it has the burden of proof by a preponderance of the evidence; whenever the defendant seeks a downward adjustment or downward departure that might lead to a decrease in a potential sentence the same burden is on the defendant. *See* U.S.S.G. § 6A1.3, Commentary; *United States v. Adu*, 82 F.3d 119, 123–24 (6th Cir.1996). So it is with the safety valve. Mr. Genao has the burden of proving by a preponderance of the evidence that he meets each of the five criteria for application of the safety valve and that he therefore qualifies for its benefits. *See United States v. Ajugwo*, 82 F.3d at 929 ("Because [defendant] was the party seeking the downward departure from the mandatory minimum sentence under the safety valve provision, she had the burden of proving that she met each of the five criteria."). *Accord United States v. Gambino*, 106 F.3d 1105, 1110 (2d Cir.1997); *United States v. Adu*, 82 F.3d at 123–24; *United States v. Arrington*, 73 F.3d 144, 148 (7th Cir.1996).

■ Based on all the information before it, the Court concludes that the defendant has not demonstrated by a preponderance of the evidence that at the debriefing on July 29, 1998 he "truthfully provided to the government all information and evidence [he] has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan," as required by the Guidelines. *See* U.S.S.G. § 5C1.2(5). While quite properly the Court is not bound by the judgments of the jury that unanimously acquitted Mr. Soto and Ms. Rosado or the jury that unanimously convicted Mr. Genao, the Court heard the same evidence the jurors did and finds their judgments reasonable. The Court finds that the evidence it heard demonstrates that of the three individuals on the train Mr. Genao was the ringleader and that Mr. Soto and Ms. Rosado were less involved or uninvolved. If it were judging the credibility of the witnesses for itself at the first trial, the Court would readily have found Mr. Soto not guilty and would have had at least a reasonable doubt about whether or not Ms. Rosado was involved.

As for Mr. Genao's guilt, Mr. Genao made many statements both on the train and at the police station on the date of his arrest, all of which exculpated Mr. Soto and Ms. Rosado and inculpated himself. He said the narcotics were all his and that this was his deal. One part of the motivation for his statements, as his counsel has argued, may have been to help his girlfriend, Ms. Rosado. That motivation would not explain his exculpation of Mr. Soto, however, a man who he now states was the ringleader. The physical evidence at the trials also supports the finding that Mr. Genao was not truthful with the government during the debriefing. Six duct-taped kilogram packages were found inside Mr. Genao's unlocked luggage, not Mr. Soto's luggage; Mr. Genao (not Mr. Soto) had the key to two other locked pieces of luggage that contained a total of 14 more duct-taped kilogram packages; all the luggage was on Mr. Genao's side of the train compartment, not Mr. Soto's; and Mr. Genao acknowledged to Detective McNamara that all of this luggage was his.

The testimony of Mr. Soto and Ms. Rosado at both their own trial and at Mr. Genao's first trial was to the effect that they were not knowingly involved in transporting drugs but were just "along for the ride." While not everything they said rang true, and while their testimony on the second occasion was somewhat more helpful to Mr. Genao than at their own trial, they never wavered from the statements that the narcotics was not theirs, that the luggage in which the narcotics was located was not theirs, and that they had no knowledge or involvement in the transportation of the drugs. In addition, they both testified about periods of time when Mr. Genao was out of their presence while they were in Miami, and Ms. Rosado testified that Mr. Genao packed all of the luggage in their Miami hotel room for travel back to New York and that she did not observe him doing so. In addition, there is the testimony of Mr. Genao to one of the arresting officers that he

was not even supposed to be on the train with Ms. Rosado and Mr. Soto but rather was supposed to be on an airplane traveling separately and thus be "empty" when he got back to New York.

In view of all of this testimony and much more that the Court heard during three trials, the Court shares the government's skepticism about Mr. Genao's statements that he was a knowing but secondary figure in the drug transportation and that Mr. Soto was the leader. In sum, the Court cannot find by a preponderance of the evidence that Mr. Genao has truthfully provided all information and evidence he has concerning the offense to the government. Accordingly, he does not meet the fifth criterion required under the safety valve provision of the Sentencing Guidelines and therefore is not eligible for a two-level downward departure and for release from the mandatory minimum sentence authorized by U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f).[4]

### D. Acceptance of Responsibility

■ The final argument that the defendant and his counsel make is that he is eligible for at least a two-level decrease in the offense level because he has now demonstrated his acceptance of responsibility for his offense. See U.S.S.G. § 3E1.1(a).[5] The argument that he has accepted responsibility, however, turns entirely on whether or not he truthfully provided information to the government at the July 29, 1998 debriefing. As the application note to Section 3E1.1 provides, among the factors a court must consider in deciding whether a defendant has "clearly demonstrated acceptance of responsibility" is whether he has truthfully admitted the conduct comprising the offense or conviction. See U.S.S.G. § 3E1.1(a) and Application Note 1(a). In view of the discussion in the preceding section of this Opinion, the Court concludes that the defendant has not clearly demonstrated his acceptance of responsibility.

---

4. The Court has not considered the fact of the North Carolina indictment or the allegations that underlie it in making the safety valve determination.

5. The defendant does not seriously suggest that he is entitled to the full three-level decrease often

provided by Section 3E1.1 because he did not timely provide information to the government, did not enter a guilty plea, and did not permit the government and the Court to avoid the time necessary for trial preparation and trial.

The defendant's requests for downward adjustments and downward departures are denied.

SO ORDERED.

### ORDER

After consultation with counsel, it is hereby

ORDERED that the Clerk of the Court is directed to file on the public record the redacted version of the Court's Opinion of October 2, 1998 attached hereto.

SO ORDERED.