**UNITED STATES of America,**

v.

**Shola AYENI, Defendant.**

**No. CR.A. 02–009(RWR).**

United States District Court, District of Columbia.

Feb. 25, 2003.

146

Howard R. Sklamberg, U.S. Department of Justice, Public Integrity Section Criminal Division, Washington, DC, for U.S.

Bravitt Cola Manley, Jr., Douglas Bernard Evans, Sr., Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

ROBERTS, District Judge.

Defendant Shola Ayeni was convicted by a jury of conspiracy, wire fraud, theft from a program receiving federal funds, and first degree fraud. The defendant has filed a motion for a new trial,[1] arguing that

---

1. Although the caption of the defendant's motion is "Request for Judgment Notwithstanding the Verdict and Request for New Trial," the body of the motion makes clear that the defendant is moving only for a new trial. *See id.* at 2. Accordingly, the defendant's motion

the defendant's right to a fair trial was violated by a contact between a government witness and a member of the jury, and by the Court granting the parties time for additional closing arguments to address questions posed by the deliberating jury. Because the defendant has not shown that the contact between the government witness and the juror affected the jury in any way and it was within the Court's discretion to allow supplemental closing arguments, and because the defendant has failed to show that a miscarriage of justice will result if the verdict is not overturned, the defendant's motion will be denied.

### BACKGROUND

Ayeni was a licensed attorney often appointed by the Superior Court of the District of Columbia to represent indigent defendants. He and co-defendant Troy Robinson were charged in an indictment with conspiracy and related substantive offenses in connection with an alleged scheme to defraud the Superior Court by obtaining payment from the Superior Court for fraudulent witness fee vouchers. Robinson pled guilty to the indictment but Ayeni proceeded to trial. Ayeni's first trial ended in a mistrial, after the jury in that case was unable to reach a unanimous verdict.

Robinson testified for the government at Ayeni's second trial. After the jury began deliberating, the jury sent a note which said that one of the jurors had disclosed to the others that he had encountered Robinson during a recess in the proceedings. In response to the note, I instructed the jury to stop deliberating and to have the juror in question come into the courtroom. I thereafter questioned the juror. He said Robinson had asked him whether he knew where Robinson could obtain vouchers.

The juror replied to Robinson that he was new to the courthouse and did not know what Robinson was talking about. In response to my questions, the juror vowed that despite the incident, he would still be able to follow my earlier instruction to consider as evidence during deliberations only the evidence introduced in the courtroom during the trial, and not events he may have seen outside the courtroom.

Because the juror had mentioned the incident to the other members of the jury, each juror was brought into the courtroom and questioned individually regarding what he or she knew about the incident and whether the juror could still follow the instruction to consider as evidence during deliberations only the evidence introduced in the courtroom during the trial. No other juror witnessed the incident or had heard more about it. Each juror vowed that the incident would in no way interfere with his or her ability to abide by the instruction to consider as evidence only the evidence introduced in court. Having credited the jurors' responses, I denied the defendant's motion for a mistrial.

In another note, the jury announced that it was unable to reach a unanimous verdict. In response, I proposed to the jury that it return to the jury room, identify areas of agreement and areas of disagreement, and discuss the law and the evidence as they relate to the areas of disagreement. I instructed the jurors that if, after doing this, they were still having disagreements, they were welcome, but not required, to identify for the Court any questions they had about the evidence or the instructions regarding which they would like assistance from the Court or counsel. I suggested that if they chose this option, they should list, in writing, what further

will be treated only as a motion for a new trial under Fed.R.Crim.P. 33.

assistance might help them in reaching a verdict.

After receiving these instructions, the jury continued its deliberations. A short time later, the jury sent out a note that asked why the government's handwriting expert was called to testify, and whether the parties agreed that the defendant's signatures in Superior Court witness voucher log books were authentic. After counsel submitted briefs on this development, I chose to allow the parties to deliver supplemental closing arguments to address the jury's questions. Each side did so. The defendant now challenges the responses to both jury notes and seeks a new trial.

## DISCUSSION

A motion for a new trial may be granted if the court concludes "it would be a miscarriage of justice to let the verdict stand." *United States v. Walker*, 899 F.Supp. 14, 15 (D.D.C.1995) (internal quotation marks omitted). It is within the trial court's sound discretion to determine whether a new trial is warranted. *See id.* For a verdict to be set aside, the moving party must show that an error has occurred, that the error "was substantial, not harmless, and that the error 'affected the defendant's substantial rights.'" *Id.* (quoting *United States v. Johnson*, 769 F.Supp. 389, 395–96 (D.D.C.1991)).

When a motion for a new trial is based on improper juror contact, the ultimate inquiry is whether the contact resulted in prejudice to the defendant. *United States v. Gartmon*, 146 F.3d 1015, 1028–29 (D.C.Cir.1998). In determining whether the defendant was prejudiced, the court considers the nature of the communication, the length of the contact, whether possible juror taint would have been removed by any limiting instruction, and the impact of the communication on both the juror in-

volved and the rest of the jury. *United States v. Williams*, 822 F.2d 1174, 1188–89 (D.C.Cir.1987), *superseded by rule on other grounds as stated in United States v. Caballero*, 936 F.2d 1292, 1298–99 (D.C.Cir.1991).

The defendant argues that I improperly denied his motion for a mistrial after the encounter between Robinson and the juror was revealed. The defendant's argument in support of his claim consists only of a brief description of the facts underlying the claim followed by a conclusory statement that his "rights to a fair and impartial trial were violated and the only remedy is to set aside the jury's verdict and give [the defendant] a new trial."

The defendant cites no law in support of his argument and provides no analysis of his claim. More importantly, nowhere in the defendant's motion does he set forth an argument that he was prejudiced by the incident in question. Nor is any prejudice apparent. The juror's testimony regarding the encounter established that the encounter was brief, that Robinson did not attempt to coerce or intimidate the juror, and that Robinson did not try to discuss the merits of the case with him. In addition, each juror was questioned individually outside the presence of the other jurors, and each juror assured the parties and me that she or he would consider as evidence during deliberations only the evidence introduced in court. Moreover, in light of the substantial evidence of guilt before the jury, it cannot reasonably be argued that the incident contributed in any meaningful way to the verdict against the defendant. *See Gartmon*, 146 F.3d at 1029. In sum, the defendant's claim that the encounter between a member of the jury and Robinson deprived the defendant of a fair and impartial trial lacks support in the record.

The defendant also seeks a new trial claiming that it was improper to allow supplemental closing arguments, reasserting the arguments set forth in his earlier brief on this issue. He cites no cases in support of his argument, though. Rather, both in his earlier brief on the issue and in the present motion, the defendant concedes that courts in other jurisdictions have allowed supplemental closing arguments under varying circumstances. *See e.g., United States v. Horton,* 921 F.2d 540, 547 (4th Cir.1990) (stating that "where a new theory is presented to the jury in a supplemental instruction after closing argument, the court generally should give counsel time for additional argument"); *United States v. Owens,* 453 F.2d 355, 355 (5th Cir.1971) (holding that the district court did not abuse its discretion in granting each party additional closing arguments). *See also* Hon. B. Michael Dann, *"Learning Lessons" and "Speaking Rights": Creating Educated and Democratic Juries,* 68 Ind. L.J. 1229, 1269, 1271–72 (1993) (proposing that courts follow the practice of allowing supplemental arguments and presenting a study of a case in which that practice was followed). Indeed, in defendant's earlier brief, he conceded as applicable the legal precedent cited by the government in support of allowing supplemental argument and agreed that the government's memorandum on the issue was accurate. *See* Def.'s Resp. to Government's Mem. Concerning (I) Propriety of Providing Supplemental Jury Instruction for Second Degree Fraud and (II) Propriety of Providing Supplemental Closing Argument in Resp. to Specific Jury Request at 1.

With no caselaw to support his claim that supplemental closing arguments are improper, the defendant states only that it has not been the practice of courts in this jurisdiction to allow such supplemental arguments to the jury. I fully considered and rejected defendant's argument when I denied the defendant's earlier motion for a mistrial.

I had invited the jurors to say what assistance might help them reach a verdict. They did so, asking why a witness was called and whether the parties agreed about the authenticity of signatures. The jury was entitled at that point to the help it was invited to seek. I could have attempted to fashion an answer that characterized the government's position concerning the importance of the handwriting expert's testimony, and the parties' positions about the questioned signatures. The risk was that such an instruction from the Court, worded so as to avoid lapsing into advocacy, might not sufficiently or fairly capture the parties' nuanced positions and would be unresponsive. Alternatively, I could have simply instructed the jurors that they had to rely upon their recollection of the evidence and arguments. That would have been of no help. Helpful and responsive answers required advocacy. The jury's questions were precisely the types of questions to which supplemental argument was well-suited.

The defendant has not offered any new arguments that warrant vacating my earlier ruling. The defendant has failed to demonstrate that he was unfairly prejudiced by the supplemental closing arguments or that a miscarriage of justice will result if the verdict is not overturned. Accordingly, the defendant's motion for a new trial will be denied.

### CONCLUSION

Because the defendant has failed to present any evidence that he was prejudiced by the contact between a member of the jury and Robinson, and because the defendant has failed to carry his burden of

establishing that a miscarriage of justice will result if the verdict is allowed to stand, the defendant's motion for a new trial will be denied. Accordingly, it is hereby

ORDERED that the defendant's motion for new trial [73] be, and hereby is, DENIED.